UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
                                                    :
RITCHIE CAPITAL MANAGEMENT, L.L.C.,    :
et al.,                                            :
                                  Plaintiffs,       :       14 Civ. 2557 (LGS)
                                                    :
                    -against-                       :       <u>ORDER & OPINION</u>
                                                    :
JPMORGAN CHASE & CO., et al.,              :
                                       Defendants.   :
                                                    :
------------------------------------------------------------X

<pre>
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 11/10/2014
</pre>

LORNA G. SCHOFIELD, District Judge:

        Plaintiffs Ritchie Capital Management, LLC, Ritchie Capital Management, Ltd., Ritchie Special Credit Investments, Ltd., Rhone Holdings II, Ltd., Yorkville Investments I, LLC, and Ritchie Capital Structure Arbitrage Trading, Ltd. brought this action in New York state court against Defendants JPMorgan Chase & Co., JPMorgan Chase Bank, N.A. (collectively, "JPMC"), Richter Consulting, Inc. ("Richter") and sixteen banks and financial institutions (the "Syndicated Lenders"). Plaintiffs assert violations of New York Debtor and Creditor Law, and common law. Defendants removed the action to this Court based on federal question jurisdiction under the Edge Act and because the action is "related to" proceedings in the United States Bankruptcy Court for the District of Minnesota. Plaintiffs now move to remand. For the reasons below, the motion is denied, and the case is transferred to the District of Minnesota.

## I.     BACKGROUND

### A.  Factual Background

        As required on a motion to remand, all relevant allegations in the Complaint are accepted as true and all factual ambiguities are resolved in favor of Plaintiffs. *See, e.g.*, *Kunstenaar v. Hertz Vehicles, LLC*, No. 14 Civ. 1101, 2014 WL 1485843, at *1 n.1 (S.D.N.Y. Apr. 14, 2014). The recitation below is based on the allegations in the Complaint except as otherwise indicated.

The Complaint's primary allegation is that JPMC knew, or consciously avoided learning, that Thomas J. Petters and his company Petters Company, Inc. ("PCI"), were committing fraud and operating a Ponzi scheme. Petters allegedly used JPMC bank accounts to launder money in furtherance of his frauds. As a result of JPMC and the Syndicated Lenders' aiding and abetting Petters' frauds, Plaintiffs suffered a loss of about $189 million.

The timeline, in brief, is as follows. In 2005 JPMC sold its indirect majority ownership of Polaroid Corporation ("Polaroid") to Petters and earned a large profit. Polaroid thus became a subsidiary of Petters Group Worldwide ("PGW"). To facilitate the sale, JPMC and the Syndicated Lenders loaned Petters a total of $375 million the day after the sale closed (the "Credit Facility"). When Petters and Polaroid were unable to repay these post-acquisition loans, JPMC, also acting as the Syndicated Lenders' agent, did not foreclose on the loans. Instead, JPMC entered into a series of forbearance agreements and extensions, and with Richter's assistance, helped Petters find other sources of funding to repay JPMC and the Syndicated Lenders. Plaintiffs were among those other sources.

Petters – with the help of JPMC and Richter – fraudulently induced Plaintiffs to make a series of loans to Petters and his companies, ultimately totaling approximately $189 million. The proceeds of Plaintiffs' loans were used in part to refinance the Credit Facility loans from JPMC and the Syndicated Lenders, and repay prior lenders to the Ponzi scheme at PCI. Plaintiffs have recovered only a small portion of the money they loaned to Petters.

The following transactions relate to the $189 million that Plaintiffs loaned to Petters and his companies and are particularly relevant to this motion:

- On February 1, 2008, Plaintiffs transferred $31 million to PCI, which was then "transferred numerous times through bank accounts of several shell entities associated with Petters, before

being wired to the JPMorgan bank accounts in London, New York, and Chicago" on February 5, 2008, to repay JPMC and the Syndicated Lenders.

- On February 7, 2008, Plaintiffs transferred an additional $16 million to PCI, which was then allegedly transferred "through numerous accounts in the United States and abroad." Five days later, $12 million of this loan was used to repay a short-term loan made by JPMC to Polaroid on February 7, 2008.

- According to the Summons appended to Plaintiffs' Notice of Removal, Defendant "JP Morgan Chase Bank, N.A. entered into a 'Blocked Accounts' agreement with J.P. Morgan Europe Limited and Polaroid Consumer Electronics Europe B.V., which established highly suspicious accounts in London that Petters used to illegally launder money."

### B. Bankruptcy Proceedings

Between October 2008 and June 2009 the following Petters entities filed for Chapter 11 protection in the United States Bankruptcy Court for the District of Minnesota: PCI, PGW, Polaroid and Petters Capital LLC. *See In re Petters Co., Inc.*, Case No. 08-45257 (Bankr. D. Minn. Oct. 11, 2008); *In re Petters Group Worldwide, LLC*, Case No. 08-45258 (Bankr. D. Minn. Oct. 11, 2008); *In re Polaroid Corp.*, Case No. 08-46617 (Bankr. D. Minn. Dec. 18, 2008); *In re Petters Capital, LLC*, Case No. 09-43847 (Bankr. D. Minn. June 12, 2009). Petters has not filed for bankruptcy.

The Trustees in these bankruptcy cases have filed adversary proceedings against Plaintiffs to set aside certain fraudulent and/or preferential transfers of the Debtors' property to Plaintiffs. These transfers were essentially partial repayments or obligations incurred by the Debtors in connection with the loans described above. On January 6, 2014, the District Court in Minnesota affirmed the Bankruptcy Court's grant of summary judgment in favor of Polaroid's trustee. *See*

*Ritchie Capital Mgmt., L.L.C. v. Stoebner*, No. Civ. 12-3038, 2014 WL 1386724 (D. Minn. Jan. 6, 2014). That order is being appealed and the remaining adversary proceedings against Plaintiffs remain pending.

The Trustees have also filed adversary proceedings against JPMC seeking disallowance and avoidance of certain transfers of the Debtors' property to JPMC and its affiliates, including "transfers made to JPMC to pay interest and principal on the Credit Facility." The Bankruptcy Court recently heard oral arguments on JPMC's motions to dismiss these cases on October 21, 2014.

### C. Other Proceedings

The present action is one of many that Plaintiffs have brought in courts across the country seeking to recover losses that resulted from Petters' frauds. *See, e.g.*, *Ritchie Capital Mgmt., L.L.C. v. Jeffries*, 849 F. Supp. 2d 881 (D. Minn. 2012), *appeal voluntarily dismissed* (Jan. 4, 2013) (dismissing case against former CEOs of Petters' companies as duplicative of bankruptcy proceedings); *Ritchie Capital Mgmt., L.L.C. v. Coleman*, No. Civ. 12-270, 2012 WL 1901300 (D. Minn. May 25, 2012) (dismissing case against Petters' former colleagues and law firm as duplicative of bankruptcy proceedings); *Ritchie Capital Mgmt., L.L.C. v. Fredrikson & Byron P.A.*, 980 F. Supp. 2d 1010 (N.D. Ill. 2013) (remanding case against former law firm because of lack of diversity to Illinois state court, where case was dismissed); *Ritchie Capital Mgmt., L.L.C. v. Opportunity Fin., L.L.C.*, 511 B.R. 603 (D. Minn. 2014) (remanding case to Minnesota state court because mandatory abstention applied); *Ritchie Capital Mgmt., L.L.C. v. Cotsco Wholesale Corp.*, No. 14 Civ. 4819 (S.D.N.Y.) (Broderick, J.) (pending); *Ritchie Capital Mgmt., L.L.C. v. BMO Harris Bank, N.A.*, No. 14 Civ. 1936 (S.D.N.Y.) (Ramos, J.) (pending).

## II.   LEGAL STANDARD

Pursuant to 28 U.S.C. § 1441(a), "[a]n action which was originally filed in state court may be removed by a defendant to federal court only if the case could have been originally filed in federal court." *Hernandez v. Conriv Realty Assocs.*, 116 F.3d 35, 38 (2d Cir. 1997). "A party seeking removal bears the burden of showing that federal jurisdiction is proper." *Montefiore Med. Ctr. v. Teamsters Local 272*, 642 F.3d 321, 327 (2d Cir. 2011) (citation omitted). "[O]ut of respect for the limited jurisdiction of the federal courts and the rights of states, [courts] must resolve any doubts against removability." *In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig.*, 488 F.3d 112, 124 (2d Cir. 2007) (internal quotation marks and alterations omitted).

A district court may transfer a case to "[a] district . . . where it might have [originally] been brought" considering "the convenience of parties and witnesses, in the interest of justice." 28 U.S.C. § 1404(a). "It is well established that a district court can order a transfer *sua sponte*, provided that [the] court give[s] notice to the parties of its intention to do so in order that the parties may respond." *Angelov v. Wilshire Bancorp*, No. 06 Civ. 4223, 2007 WL 2375131, at *3 (S.D.N.Y. Aug. 14, 2007) (collecting cases); *see also Cento Pearl v. Arts & Craft Supply Inc.*, No. 03 Civ. 2424, 2003 WL 1960595, at *1 (S.D.N.Y. Apr. 24, 2003) (collecting cases).

## III.   DISCUSSION

Plaintiffs argue that this action should be remanded because the Court lacks federal subject matter jurisdiction under the Edge Act and U.S. bankruptcy law; and even if there is "related to" bankruptcy jurisdiction, abstention is warranted. These arguments are rejected.

### A. The Edge Act

For an action "[t]o be removable under the Edge Act, 12 U.S.C. § 632, [it] must: (1) be a civil suit, (2) have a federally chartered corporation as a party, and (3) arise 'out of transactions

5

involving international or foreign banking, [including territorial banking], or out of international or foreign financial operations.'" *Wilson v. Dantas*, 746 F.3d 530, 535 (2d Cir. 2014) (quoting *Am. Int'l Grp., Inc. v. Bank of Am. Corp.*, 712 F.3d 775, 780-81 (2d Cir. 2013) ("*AIG II*") (alterations in original, emphasis removed). Further, the "necessary offshore transaction must be that of the federally chartered corporation" that is party to the suit. *AIG II*, 712 F.3d at 784.

Here, all parties agree that the first two requirements are met. This is a civil suit, and federally chartered corporations including JPMC, Wells Fargo Bank N.A. and PNC Bank N.A. are parties. In addition, all parties agree that international or foreign banking transactions by JPMC are implicated in the action. The only point of disagreement among the parties has also divided the courts in this district: whether the foreign transactions are implicated to such an extent that the case can be said to "arise out of" those transactions. Plaintiffs contend that for Edge Act jurisdiction to exist the transactions must be central to the claim. *See, e.g.*, *Weiss v. Hager*, No. 11 Civ. 2740, 2011 WL 6425542, at *3 (S.D.N.Y. Dec. 19, 2011) (Edge Act jurisdiction does not exist where international banking transactions are "incidental"); *Bank of N.Y. v. Bank of Am.*, 861 F. Supp. 225, 233 (S.D.N.Y. 1994). Defendants counter that Edge Act jurisdiction is appropriate "if any part of" the transactions at issue implicates international or foreign banking. *See In re Lloyd's Am. Trust Fund Litig.*, 928 F. Supp. 333, 338 (S.D.N.Y. 1996).

Most, if not all, of the cases that the parties reference in their Edge Act arguments predate the Second Circuit's recent decision in *AIG II*, 712 F.3d 775 (2013), which controls the disposition here. In that case, AIG and its subsidiaries brought suit in state court against, among others, Bank of America Corporation, a federally chartered bank, for fraudulent misrepresentations in underwriting, sponsoring or selling residential mortgage-backed securities. *AIG II*, 712 F.3d at 778. "A tiny percentage of the mortgages" were secured by real property in

the United States territories of Guam and Puerto Rico. *Id.* In the district court, AIG argued that the connection to territorial or foreign banking was too attenuated because AIG challenged only the residential mortgage-backed securities and not the underlying mortgage transactions involving territorial properties. *Am. Int'l Grp., Inc. v. Bank of Am. Corp.*, 820 F. Supp. 2d 555, 557 (S.D.N.Y. 2011) ("*AIG I*"). The district court denied the motion for remand and held that the mere "presence of the territorial mortgages," however "incidental" to foreign or territorial banking, allowed it to exercise jurisdiction. *Id.* Further, the court concluded that "Edge Act jurisdiction lies even if the foreign or territorial transactions comprise only a 'small portion' of the challenged transactions." *Id.* (quoting *Pinto v. Bank One Corp.*, No. 02 Civ. 8477, 2003 WL 21297300, at *3 (S.D.N.Y. June 4, 2003)). Finally, the district court was "not convinced that the Edge Act requires a perfect match between the particular entity involved in the territorial transaction and the party against whom the claim is brought." *Id.* at 558.

On appeal, the Second Circuit vacated the district court's judgment solely on the final ground. It held that, for Edge Act jurisdiction to exist, "the suit must arise out of an offshore banking or financial transaction of [a] federally chartered corporation" that is party to the suit. *AIG II*, 712 F.3d at 784. The court did not express any disagreement with the lower court's conclusion that the minimal territorial nexus to offshore transactions was sufficient to confer Edge Act jurisdiction; the court apparently was not concerned that the territorial nexus was based on a "tiny percentage" of mortgages at issue, or that that property securing the mortgages that backed the securities, and not the securities themselves, was "territorial." To the contrary, the court wrote of "*the* necessary transaction" to establish Edge Act jurisdiction and the requirement "of *an* offshore transaction." *Id.* at 783-84. (emphases added). In sum, the Second Circuit required the district court to reconsider its Edge Act ruling in only one way – by requiring that the

federally chartered bank that is party to the suit to undertake the necessary international or foreign transactions.

That limitation is met here. In their Summons with Notice, Plaintiffs allege that JPMC, a federally chartered bank, entered into a "Blocked Accounts" agreement with J.P. Morgan Europe Limited and Polaroid Consumer Electronics Europe B.V. The Complaint alleges that JPMC structured Polaroid accounts in London, New York and Chicago to assist Petters in laundering money; that JPMC "opened ten bank accounts in London for three Polaroid subsidiaries in the Netherlands" which were "designed" in violation of JPMC's compliance and reporting obligations; that a $31 million loan from Plaintiffs to Petters, fraudulently induced by JPMC, "was transferred numerous times through bank accounts of several shell entities associated with Petters, before being wired to the JPMorgan bank accounts in London" and the United States "to obscure the source of the funds"; and that the money from the same $31 million loan was eventually "transferred to JPMorgan to repay Polaroid's remaining debt to JPMorgan and the Syndicated Lenders." Because Plaintiffs' allegations of aiding and abetting and fraud implicate numerous foreign or international banking transactions by JPMC, the present action "arises out of" those transactions.

In urging a contrary holding, Plaintiffs point to *Weiss v. Hager*, which in turn relied on *Bank of New York v. Bank of America*, 861 F. Supp. 225, to conclude that "the banking aspect of the jurisdictional transaction must be legally significant." 2011 WL 6425542, at *3. As an initial matter, both cases predate the Second Circuit's decision in *AIG II*. Even taken on their own terms, however, the cases do not counsel a different result. First, "[i]n *Bank of New York*, the Court . . . refused to apply [the Edge Act], because the Court characterized as a contract dispute the underlying dispute between the two banks involving a single incomplete purchase of certain

assets. Here by contrast the Plaintiffs pose a wide-ranging challenge to multiple . . . operations of a complex of [JPMC] bank accounts . . . ." *In re Lloyd's Am. Trust Fund Litig.*, 928 F. Supp. at 340.

Second, *Weiss* "involve[d] no banking law issues, and none of the European banks that received plaintiff's money [were] sued in the complaint." 2011 WL 6425542, at *3. The individual plaintiff in that case alleged that as a result of fraud by a bank employee he, among other things, transferred funds to non-party European banks. In holding that no Edge Act jurisdiction existed in that case, the court observed that "when banking activities predominate [or are indispensable] . . . jurisdiction will likely be found." *Id.* at *4. In the present case, banking activities predominate and are legally significant. The Complaint alleges not only that JPMC aided and abetted Petters' frauds by transferring money through its many accounts, but also that it acted contrary to bank regulatory and compliance requirements.

Accordingly, Plaintiffs' motion to remand for lack of Edge Act jurisdiction is denied.

## B.  "Related to" Bankruptcy Jurisdiction

Federal subject matter jurisdiction in this case also exists based on 28 U.S.C. § 1334(b). Under 28 U.S.C. § 1334(b), "district courts . . . have original but not exclusive jurisdiction of all civil proceedings . . . related to cases under title 11." It is well established that a civil proceeding is "related to" a title 11 case if the outcome of the litigation "might have any conceivable effect on the bankruptcy estate" or has "any significant connection with the bankrupt estate." *In re Cuyahoga Equip. Corp.*, 980 F.2d 110, 114 (2d Cir. 1992) (internal quotation marks removed). "Certainty, or even likelihood, is not required to satisfy the conceivable effect test; jurisdiction will exist so long as it is possible that the proceeding may affect the debtor's rights or the administration of the estate." *Smartmatic USA Corp. v. Dominion Voting Sys. Corp.*, No. 13 Civ.

5349, 2013 WL 5798986, at *4 (S.D.N.Y. Oct. 22, 2013) (internal quotation marks and emphasis removed). Finally, a "proceeding need not necessarily be against the debtor or against the debtor's property to satisfy the requirements for related to jurisdiction. [] Instead, there must be some nexus between the 'related' civil proceeding and the title 11 case." *Rahl v. Bande*, 316 B.R. 127, 133 (S.D.N.Y. 2004) (internal quotation marks removed).

Because the present litigation could have an impact on the bankruptcy estates of Petters' companies, 28 U.S.C. § 1334(b) provides a basis for federal jurisdiction. Any judgment the Plaintiff may obtain in this action will likely affect the funds that the bankruptcy Trustees in the JPMC adversary proceedings in the District of Minnesota may recover. Further, Plaintiffs concede that "many of the facts are identical [to those in the bankruptcy proceedings] – the Petters Ponzi scheme, JPMorgan and Richter's knowledge and assistance to the scheme, etc.," but insist that "the harm that resulted from these common facts is separate." That the harm may be separate does not diminish the fact that this litigation may affect the bankruptcy estates. Consequently, the present case is related to the bankruptcy proceedings in the District of Minnesota. *See Ritchie Capital Mgmt., L.L.C. v. Opportunity Fin., L.L.C.*, 511 B.R. 603, 611 (D. Minn. 2014) (finding "related to" bankruptcy jurisdiction in a case where Plaintiffs allege similar claims of aiding and abetting Petters' frauds against a different set of defendants).

Plaintiffs' attempts to defeat this conclusion are unavailing. First, Plaintiffs argue that "related to" bankruptcy jurisdiction does not exist because Petters is not party to any bankruptcy action and that the fraud they complain of involves Petters alone and not his companies which are in bankruptcy. However, the present case is premised on the allegation that money Plaintiffs loaned to Petters was fraudulently laundered through multiple accounts to pay off debts that Petters' companies owed to JPMC and the Syndicated Lenders. The clear distinction Plaintiffs

would draw between Petters' transactions and those of his bankrupt companies is not borne out by Plaintiffs' own Complaint.

Second, Plaintiffs argue against "related to" jurisdiction because JPMC challenged the bankruptcy proceedings against it as meritless. Plaintiffs urge that "the present matter will not impact claims that are meritless." District courts have "related to" jurisdiction over "all civil proceedings . . . related to cases under title 11," regardless of the merits of the cases. 28 U.S.C. § 1334(b).

Finally, Plaintiffs point out that not all Defendants in the present action are parties in the bankruptcy proceedings. Again, that argument does not explain why the present case will not have "any conceivable effect" on the bankruptcy estates.

Consequently, 28 U.S.C. § 1334(b) provides an independent basis for jurisdiction.

**C. Abstention**

Plaintiffs argue that even if "related to" bankruptcy jurisdiction exists, the Court should consider whether abstention, either mandatory or equitable, is required. Neither is appropriate in the present case.

There are six requirements for mandatory abstention: (1) the motion to abstain is timely; (2) the action is based on a state law claim; (3) the action is "related to" but not "arising in" a bankruptcy case or "arising under" the Bankruptcy Code; (4) § 1334 provides the sole basis for federal jurisdiction; (5) an action is commenced in state court; and (6) the action can be timely adjudicated in state court. *Fried v. Lehman Bros. Real Estate Assocs. III, L.P.*, 496 B.R. 706, 711 (S.D.N.Y. 2013).

Here, four of the requirements are easily satisfied. No party disputes that Plaintiffs' motion to abstain is timely. Further, the action is based on state law claims, it is "related to" bankruptcy cases, and it was commenced in state court.

However, Section 1334 does not provide the sole basis for jurisdiction in the present case. As discussed above, the Edge Act provides an independent jurisdictional basis. Therefore, mandatory abstention is inapplicable.

Equitable or permissive abstention is similarly inappropriate. 28 U.S.C. § 1452(b) governs remand in bankruptcy-related proceedings, and provides that "[t]he court to which such claim or cause of action is removed may remand such claim or cause of action on any equitable ground." A court may also permissively abstain under 28 U.S.C. § 1334(c)(1). The analysis for permissive abstention is "essentially identical" to that for equitable abstention. *See, e.g.*, *Shiboleth v. Yerushalmi*, 412 B.R. 113, 119 n.5 (S.D.N.Y. 2009).

> Factors to be considered for equitable or permissive abstention include:
>
> (1) the effect or lack thereof on the efficient administration of the estate if a Court recommends abstention, (2) the extent to which state law issues predominate over bankruptcy issues, (3) the difficulty or unsettled nature of the applicable state law, (4) the presence of a related proceeding commenced in state court or other non-bankruptcy court, (5) the jurisdictional basis, if any, other than 28 U.S.C. § 1334, (6) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case, (7) the substance rather than form of an asserted 'core' proceeding, (8) the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court, (9) the burden of [the court's] docket, (10) the likelihood that the commencement of the proceeding in a bankruptcy court involves forum shopping by one of the parties, (11) the existence of a right to a jury trial, and (12) the presence in the proceeding of non-debtor parties.

*Fried*, 496 B.R. at 712-13. "In determining whether to exercise permissive abstention under § 1334(c) courts have considered *one or more* (not necessarily all) of twelve factors." *In re Cody, Inc.*, 281 B.R. 182, 190 (S.D.N.Y. 2002) (emphasis in original).

The balance of the relevant factors counsels against remand. The present case is closely tied to bankruptcy proceedings. No party claims that the state law claims are novel or unsettled. And jurisdiction exists under 12 U.S.C. § 632 in addition to 28 U.S.C. § 1334. On the other hand, the Complaint is based entirely on state law, and non-debtor parties are present in the proceeding. Finally, the impact on the efficient administration of the bankruptcy estate is unclear, and neither party contends that any related cases pending in state or non-bankruptcy courts weigh in favor of abstention.

Considering the totality of the factors, and particularly the close relationship between the claims in the bankruptcy cases and the present case, permissive or equitable abstention is inappropriate.

**D. Transfer**

Even though "related to" bankruptcy jurisdiction exists, this case is related to bankruptcy proceedings that are ongoing in a different judicial district – the District of Minnesota. Because an analysis of the relevant factors favors transfer to that district, the case is transferred to the District of Minnesota.

"Although a transfer pursuant to § 1404(a) is typically premised on the motion of a party, the statute is broad enough that a court can transfer a case on its own initiative. . . . Before *sua sponte* transferring a case, however, the transferring court should . . . allow the parties to present their views." *Barnet v. Elan Corp.*, 236 F.R.D. 158, 164 (S.D.N.Y. 2005). The parties were given such an opportunity. In an order dated October 20, 2014, the parties were asked to explain why the present case "cannot or should not be transferred to the District of Minnesota." On October 24, 2014, the parties responded with letter briefs.

Transfer is permissible under § 1404(a) only if the case "might have [originally] been brought" in the District of Minnesota. Venue is proper in the District of Minnesota and the case could have been brought there because "a proceeding . . . related to a case under title 11 may be commenced in the district court in which such case is pending." 28 U.S.C. § 1409(a). In response to the query why the case could or should not be transferred to the District of Minnesota, none of the parties objected based on that court's lack of personal jurisdiction. Further, Plaintiffs and JPMC have already submitted to the jurisdiction of that court in other proceedings, and the remaining defendants do not contest the court's jurisdiction. Accordingly, the case could have originally been brought in Minnesota. *See Ritchie Capital Mgmt., LLC v. Jeffries*, No. 09 Civ. 07228, 2010 WL 768877, at *3 (N.D. Ill. Mar. 4, 2010) ("venue and jurisdiction are proper" in the District of Minnesota where Plaintiffs submitted to that court's jurisdiction in related bankruptcy actions and the defendants either request transfer or do not object to it).

The next inquiry is whether transfer would benefit the parties and witnesses and serve the interest of justice. 28 U.S.C.§ 1404(a). "District courts have broad discretion in making determinations of convenience under Section 1404(a), and notions of convenience and fairness are considered on a case-by-case basis." *D.H. Blair & Co., Inc. v. Gottdiener*, 462 F.3d 95, 106 (2d Cir. 2006). Courts typically consider a variety of factors including, but not limited to: (1) the convenience of the witnesses and the availability of process to compel the attendance of unwilling witnesses; (2) the convenience of the parties; (3) the location of relevant documents and the relative ease of access to sources of proof; (4) the locus of operative facts; (5) the relative means of the parties; (6) the comparative familiarity of each district with the governing law; (7) the weight accorded to the plaintiff's choice of forum; and (8) judicial economy and the interests

14

of justice. *See Bank of Am., N.A. v. Wilmington Trust FSB*, 943 F. Supp. 2d 417, 426 (S.D.N.Y. 2013).

Transfer is appropriate here. Most of the relevant factors are neutral at best. The convenience of the parties and witnesses does not strongly favor or counsel against transfer. While JPMC, Plaintiffs and party witnesses may find New York more convenient, non-party witnesses related to Petters' companies, which were based in Minnesota, are likely to find Minnesota more convenient. Similarly, the relevant documents are, and the relevant events were, spread across Minnesota, Illinois and New York, and their location does not strongly favor any one forum.

Certainly, the District of Minnesota is likely less familiar with New York law than this Court, but given that the causes of action are not novel, that factor does not strongly counsel against transfer. A stronger argument against transfer is that Plaintiffs' "choice of forum is entitled to considerable weight. . . . This factor, however, is not dispositive." *Nat'l Hockey League v. Moyes*, No. 10 Civ. 3032, 2010 WL 1948587, at *2 (S.D.N.Y. May 10, 2010); *see also Ritchie Capital Mgmt., LLC v. Jeffries*, 2010 WL 768877, at *3 (transferring case from the Northern District of Illinois to the District of Minnesota even though the case was brought in Plaintiffs' "home forum" and "considerable weight is given to [the] decision to choose this District," because "litigation is currently progressing in [the District of Minnesota] involving some of the same set of facts and circumstances that gave rise to this Complaint").

As "[n]umerous courts have recognized[,] . . . transfer is appropriate when various cases involving the same or substantially similar issues are simultaneously pending in the district to which the case will be transferred." *In re CenturyLink, Inc. Sec. Litig.*, No. 13 Civ. 3839, 2014 WL 1089116, at *2 (S.D.N.Y. Mar. 18, 2014) (collecting cases). This is because, "the existence

of a related action in the transferee district is a strong factor to be weighed with regard to judicial economy, and may be determinative." *Williams v. City of New York*, No. 03 Civ. 5342, 2006 WL 399456, at *3 (S.D.N.Y. Feb. 21, 2006). It is determinative here. The District Court of Minnesota has so far ruled in at least two cases involving Plaintiffs and arising out of the same core of facts alleged here. Cases arising out of those very facts also remain pending in the bankruptcy court in that district. Further, there exists a real danger that conflicting findings may emerge across the various courts where Ritchie is litigating the fallout of Petters' alleged frauds. *See Ritchie Capital Mgmt., LLC v. Jeffries*, 2010 WL 768877, at *4. The interests of justice will be best served by transferring this case to a court that already has familiarity with the underlying disputes. Consequently, the case is transferred to the District of Minnesota.

## IV.   CONCLUSION

For the foregoing reasons, Plaintiffs' motion to remand is DENIED, and the case is TRANSFERRED to the District of Minnesota.

The Clerk of Court is directed to close the motion at Dkt. No. 40 and cancel all scheduled conferences in this case. The Clerk is further directed to close the case in this District after transfer.

SO ORDERED.

Dated: November 10, 2014
       New York, New York

*[signature]*
LORNA G. SCHOFIELD
UNITED STATES DISTRICT JUDGE