## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Ritchie Capital Management, L.L.C.;
Ritchie Special Credit Investments, Ltd.;
Rhone Holdings II, Ltd.; Yorkville
Investment I, L.L.C.; Ritchie Capital
Structure Arbitrage Trading, Ltd.;
and Ritchie Capital Management, Ltd.;

Civil No. 14-4786 (DWF/FLN)

**MEMORANDUM
OPINION AND ORDER**

Plaintiffs,

v.

JPMorgan Chase & Co; JPMorgan Chase
Bank, N.A.; J.P. Morgan Private Bank;
Richter Consulting, Inc.; Wells Fargo &
Co., as successor by merger to Wachovia
Capital Finance (Central); Wells Fargo
Bank, N.A.; Wachovia Capital Finance
Corporation Central; UBS Loan Finance,
L.L.C.; UBS AG; UBS AG Stamford
Branch; Merrill Lynch Business Financial
Services, Inc.; LaSalle Business Credit,
L.L.C.; Bank of America Business Capital;
Bank of America Corp.; The CIT Group
Inc.; The CIT Group/Business Credit, Inc.;
PNC Bank N.A.; Fifth Third Bank;
Webster Business Credit Corporation;
Associated Commercial Finance, Inc.;
Chase Lincoln First Commercial
Corporation,

Defendants.

---

James W. Halter, Esq., Liddle & Robinson, L.L.P.; James M. Jorissen, Esq., Leonard,
O'Brien, Spencer, Gale & Sayre, Ltd; Kelly A. Lelo, Esq., and Patrick H. O'Neil, Jr.,
Esq., Larson King, LLP; counsel for Plaintiffs.

Benjamin E. Gurstelle, Esq., Kevin M. Decker, Esq., and John R. McDonald, Esq., Briggs & Morgan, PA; and David J. Woll, Esq., Isaac Martin Rethy, Esq., Michael Freedman, Esq., Thomas Charles Rice, Esq., William T. Pilon, Esq., Simpson Thacher & Bartlett LLP, counsel for Defendants JPMorgan Chase & Co; JPMorgan Chase Bank, N.A.; J.P. Morgan Private Bank; Chase Lincoln First Commercial Corporation; and J.P. Morgan Europe Ltd.

Bradley R. Schneider, Esq., David H. Fry, Esq., Kevin H. Scott, Esq., and Marc T.G. Dworsky, Esq., Munger, Tolles & Olson, LLP; and Daniel J. Millea, Esq., and Elizabeth V. Kniffen, Esq., Zelle Hofmann Voelbel & Mason LLP, counsel for Defendants Wells Fargo & Co.; Wells Fargo Bank N.A.; Wachovia Capital Finance Corporation (Central); UBS Loan Finance, L.L.C.; UBS AG; UBS AG Stamford Branch; Merrill Lynch Business Financial Services, Inc.; LaSalle Business Credit, L.L.C.; Bank of America Business Capital; Bank of America Corp.; The CIT Group Inc.; The CIT Group/Business Credit, Inc.; PNC Bank, N.A.; Fifth Third Bank; Webster Business Credit Corporation; Associated Commercial Finance, Inc.;

Allen P. Pegg, Esq., and John F. O'Sullivan, Esq., Hogan Lovells US LLP; and Bryant D. Tchida, Esq., Robert T. Kugler, Esq., and Timothy P. Griffin, Esq., Stinson Leonard Street LLP, counsel for Defendant Richter Consulting, Inc.

Adam A. Gillette, Esq., Baillon Thome Jozwiak & Wanta LLP; George H. Singer, Esq., and James A. Lodoen, Esq., Lindquist & Vennum LLP; Jennifer G. Lurken, Esq., Gislason & Hunter LLP; Lori A. Johnson, Esq., Nilan Johnson Lewis PA; Richard T. Thomson, Esq., and Rosanne H. Wirth, Esq., Lap Libra Thomson Stoebner & Pusch, Chartered; Terrence J. Fleming, Esq. Fredrikson & Byron; and Thomas E. Jamison, Esq., Fruth Jamison & Elsass PA, counsel for Intervenor Trustees.

---

## INTRODUCTION

The plaintiffs in this case loaned millions of dollars to a business that turned out to be part of a Ponzi scheme. The plaintiffs allege that the defendants (lenders and consultants for the business in the Ponzi scheme) were aware of the Ponzi scheme but wrongfully allowed the plaintiffs to sink their money into the business. This case is before the Court on a report and recommendation from the bankruptcy court on the

defendants' motions to dismiss.  For the reasons discussed below, the Court grants the defendants' motions.

## BACKGROUND

Plaintiffs Ritchie Capital Management, L.L.C.; Ritchie Special Credit Investments, Ltd.; Rhone Holdings II, Ltd.; Yorkville Investment I, L.L.C.; Ritchie Capital Structure Arbitrage Trading, Ltd.; and Ritchie Capital Management, L.L.C.,[1] (collectively, the "Ritchie Entities" or "Ritchie") filed suit against Defendants seeking to recover millions in loans that the Ritchie Entities made to convicted fraudster Tom Petters and entities that he controlled.  Defendants are made up of four relevant groups: (1) "JPMorgan";[2] (2) JPMorgan Europe LTD. or JPME;[3] (3) the "Syndicated Lenders";[4]

---

[1]   In 2015, Ritchie Capital Management, L.L.C. changed its name to Ritchie Capital Management SEZC, Ltd.

[2]   Defendant JPMorgan is collectively, JPMorgan Chase & Co. and JPMorgan Chase Bank, N.A.  The Court will cite to JPMorgan's Motion to Dismiss (Doc. No. 158-2) as "JPMC MTD"; The Ritchie Entities' Opposition Brief (Doc. No. 158-5) as "Ritchie-JPMC Opp."; and JPMorgan's Reply (Doc. No. 158-12) as "JPMC Reply."

[3]   The Court will cite to JPME's Motion to Dismiss (Doc. No. 158-1) as "JPME MTD"; the Ritchie Entities' Opposition Brief (Doc. No. 158-7) as "Ritchie-JPME Opp."; and JPME's Reply Brief (Doc. No. 158-11) as "JPME Reply."

[4]   The "Syndicate Lenders" include, Defendants Wells Fargo & Co., Wells Fargo Bank, N.A., UBS Loan Finance, L.L.C., UBS AG and its Stamford Brach, Merrill Lynch Business Financial Services, Inc., LaSalle Business Credit, L.L.C., Bank of America Business Capital, Bank of America Corporation, The CIT Group Inc., The CIT Group/Business Credit, Inc., PNC Bank N.A., Fifth Third Bank, Webster Business Credit Corporation, Associated Commercial Finance, Inc., and Chase Lincoln First Commercial.
The Court will cite to the Syndicate Lenders' Motion to Dismiss (Doc. No. 158-3) as "Lenders MTD"; the Ritchie Entities' Opposition Brief (Doc. No. 158-6) as

(Footnote Continued on Next Page)

and (4) Richter Consulting.[5]  In addition, the Trustees[6] from the Petters bankruptcies

have intervened.

### A.    Petters Buys Polaroid Corporation

The Petters fraud is well known[7] and is recounted in short:  Tom Petters operated a

Ponzi scheme whereby he would fabricate purchase orders from wholesalers (like

Costco) and get financiers to lend money to fund the purchase orders.  The Ponzi scheme

was operated through the Petters Company, Inc. ("PCI").  In addition, Petters owned a

number of legitimate businesses under a parent company, Petters Group Worldwide, LLC

("PGW").

In 2004, JPMorgan approached Petters about purchasing Polaroid Corporation.  At

the time, Petters had a license agreement that allowed PCI to use Polaroid's brand name

on electronic equipment.  (Doc. No. 164, Second Amended Complaint, ("SAC") ¶ 73.)

---

(Footnote Continued From Previous Page)
"Ritchie-Lenders Opp."; and the Syndicate Lenders' Reply (Doc. No. 158-15) as
"Lenders Reply."

[5]    The Court will cite to Richter Consulting's Motion to Dismiss (Doc. No. 158-4) as
"Richter MTD"; the Ritchie Entities' Opposition Brief (Doc. No. 158-8) as
"Ritchie- Richter Opp."; and Richter Consulting's Reply (Doc. No. 158-13) as "Richter
Reply."

[6]    The Trustees are John R. Stoebner, in his capacity as the Chapter 7 Trustee of
Polaroid Corporation, et al.; Douglas A. Kelley, in his capacity as the Chapter 11 Trustee
of Petters Company, Inc., et al.; and Randall L. Seaver, in his capacity as the Chapter 7
Trustee of Petters Capital, LLC.  (Doc. No. 149.)
     The Trustees filed a response to the motions to dismiss (Doc. No. 158-14) and a
response to the objections to the Report and Recommendation (Doc. No. 160-10).

[7]    *See* Tom Petters Case Summary, U.S. Dep't of Justice,
https://www.justice.gov/usao-mn/tom-petters-case-summary (last updated May 1, 2015).

But by 2004, PCI had fallen behind significantly on its license payments to Polaroid. JPMorgan allegedly used PCI's delinquent payments as leverage to force Petters to purchase Polaroid. (*Id.* ¶ 81.) JPMorgan and Petters agreed to a deal worth $426 million for Polaroid. Plaintiffs make much of the fact that JPMorgan expected Petters to buy Polaroid when PCI could not afford to even use Polaroid's name. (*Id.* ¶ 87.)

The deal had a complex structure: Petters needed to fund the full purchase price in an escrow account at Wells Fargo. JPMorgan would then refinance the completed transaction. According to Plaintiffs, the Wells Fargo account was used to circumvent anti-money laundering laws that obligate JPMorgan to investigate its customers. (*Id.* ¶ 96.) The merger resulted in PGW owning Polaroid Holding Company, which in turn owned Polaroid Corporation. The merger closed on April 27, 2005. Then, on April 28, 2005, JPMorgan loaned $125 million to Polaroid Corporation as a term loan, and Defendant Syndicate Lenders loaned another $250 million as a revolving-credit agreement. (*See id.* ¶¶ 107-108.)[8] JPMorgan was the administrative agent for the U.S.-based Syndicate Lenders and JPME was the administrative agent for the Europe-based lenders.

Fast forward to 2007, and Polaroid was in default on its loans for failure to provide audited financial statements. Polaroid had been required to provide them in 2005 and 2006, but JPMorgan had not strictly enforced the requirement. But by 2007, JPMorgan

---

[8]     Plaintiffs inadvertently allege that the JPMorgan loans occurred in March 2005, instead of the day after closing. (*See* Doc. No. 135 ¶ 2, Ex. A (Trustee Complaint Against JPMC) ¶¶ 80-86 (describing the financing of the PCI purchase of Polaroid).)

declared default.  Rather than call the debt, JPMorgan granted an extension and installed Defendant Richter Consulting at Polaroid to report to JPMorgan on Polaroid's financial condition.  Richter Consulting began examining Polaroid's business and determined that its business model was not viable.  Then in October 2007, JPMorgan, Richter, and Polaroid discussed financing options for additional forbearance and extensions of credit. PGW agreed to make repayments each week in amounts ranging from $4 to $6 million. According to the Plaintiffs, JPMorgan or Richter instructed Petters not to transfer the money directly from PCI (the Ponzi scheme) but to instead route the money through another entity, Petters Capital.  (SAC ¶ 149.)

At the end of 2007, Polaroid was still behind on its debt to JPMorgan and the Syndicate Lenders.  Under the forbearance agreement, the lenders had the option to hire an investment bank to monetize some of Polaroid's assets, but they did not do that. Instead, Richter expanded its role at Polaroid to helping to find a lender to replace JPMorgan and the Syndicate Lenders.  Pursuant to this expanded role, Richter allegedly helped Polaroid with the due-diligence process and to consult with advisors and counsel in connection with financing-related activities.  (*Id*. ¶ 156.)

### B.    The Ritchie Entities' Loans and the Ponzi Scheme Collapses

In January 2008, JPMorgan allegedly learned of PCI's Ponzi scheme and refused to grant any more extensions.  The situation became dire for Petters:  JPMorgan and the Syndicate Lenders were still owed roughly $50 million.  If Petters failed to repay the lenders, then they could take 100% of the Polaroid stock.  So on January 31, 2008, Petters reached out to the Ritchie Entities for a short-term emergency loan.  Petters and Polaroid

6

sent some due diligence materials to Ritchie. Plaintiffs allege that JPMorgan and Richter Consulting were aware that the diligence materials were inaccurate. (*See id.* ¶ 190.) Between February 1, 2008, and February 19, 2008, the Ritchie Entities loaned almost $150 million. The money went to a PCI bank account. (*Id.* ¶ 193.) The Ritchie Entities did not document the loans until February 19, 2008, when they signed a promissory note with PGW and Petters as co-obligors. The promissory notes gave Petters and PGW the sole discretion in using the money. In the Polaroid bankruptcy, Judge Nelson concluded based on the analysis of PWC accountants that none of the money from the Ritchie Entities actually went to Polaroid. *Ritchie Capital Mgmt., L.L.C. v. Stoebner*, Civ. No. 12-3038, 2014 WL 1386724, at *28 (D. Minn. Jan. 6, 2014) (citing affidavit of Theodore Martens). Instead, the loans from the Ritchie Entities went to PCI primarily to pay off investors in the Ponzi scheme. *Id.* In addition to the February loans, in March and May, Petters convinced the Ritchie Entities to loan money for purchase orders as part of the Ponzi scheme. In total, the Ritchie Entities loaned $189 million to Petters and companies that he controlled. Meanwhile, JPMorgan and the Syndicate Lenders were repaid in full by Polaroid.

On September 24, 2008, the FBI raided Petters's home and his companies' offices. On December 1, 2008, Petters, PCI, and PGW (Polaroid's parent) were indicted. (*USA v. Petters, et al.*, Crim. No. 08-364 (D. Minn), Doc. No. 79.) Days after the raid, the Ritchie Entities sought and received from Petters a security interest in Polaroid's trademarks. In December 2009, a jury convicted Petters of various federal crimes, and he was sentenced to 50 years in prison.

### C.    Aftermath

After the Ponzi scheme collapsed, a number of Petters's companies declared bankruptcy, including Polaroid and PCI. The Trustees have sought to void a number of transactions as fraudulent. As relevant here, the Trustees have sued JPMorgan to recover the loan repayments, and the Trustees sued the Ritchie Entities to void the Polaroid trademark transfer. In 2012, the bankruptcy court voided the trademark transfer, concluding that the Ritchie Entities provided no value to Polaroid. *See In re Polaroid Corp.*, 472 B.R. 22, 46 (Bankr. D. Minn. 2012) (*Polaroid I*). The decision was affirmed by the district court and the Eighth Circuit. *Ritchie Capital Mgmt., L.L.C. v. Stoebner*, Civ. No. 12-3038, 2014 WL 1386724, at *28 (D. Minn. Jan. 6, 2014) (*Polaroid II*), *aff'd sub nom. Ritchie Capital Mgmt., LLC v. Stoebner*, 779 F.3d 857 (8th Cir. 2015) (*Polaroid III*).

Ritchie has sued a number of entities that it claims learned of the Ponzi scheme, but kept quiet to recoup their investments.[9] Here, Ritchie brought 22 claims for: (1) aiding and abetting tortious conduct by JPMorgan; (2) aiding and abetting tortious conduct by Richter Consulting; (2) fraudulent transfers against the banks; (3) commercial bad faith by JPMorgan; (4) breach of fiduciary duty by JPMorgan; and (5) negligence against JPMorgan and Richter Consulting; and (6) unjust enrichment against all Defendants.

---

[9]    *See* JPMorgan MTD at 6 (collecting Ritchie cases).

The Court referred the case to the bankruptcy court, and Defendants moved to dismiss. The bankruptcy court recommended that the Court grant the motion to dismiss on jurisdictional grounds: Judge Sanberg concluded that the bankruptcy court did not have subject matter jurisdiction for some claims; Plaintiffs did not have standing to pursue the fraudulent transfer claims; and the abstention doctrine compelled dismissal for other claims because they would affect the Trustees' adversary proceedings against JPMorgan. (Doc. No. 159 ("Report and Recommendation").) Because the bankruptcy court dismissed on jurisdictional grounds, it declined to address the merits. Defendants, Trustees, and Plaintiffs all objected to various parts of the Report and Recommendation. Additionally, Plaintiffs have filed a motion to withdraw the reference to the bankruptcy court, which Defendants and the Trustees oppose.

## DISCUSSION

When, as here, the bankruptcy court has issued proposed findings and conclusions for non-core claims, the Court reviews de novo "those matters to which any party has timely and specifically objected." 28 U.S.C. § 157(c)(1). The parties have effectively objected to the entire Report and Recommendation, including Judge Sanberg's decision not to address the merits. Additionally, the parties have incorporated by reference their prior motions to dismiss. Thus, the Court is essentially presented with Defendants' original motions to dismiss. The Court therefore will approach the parties' objections as a typical motion to dismiss, noting, where relevant, the Report and Recommendation.

## I.    Motion to Dismiss for Lack of Personal Jurisdiction over JPME

### A.    Standard of Review

Defendant JPMorgan Europe (generally, "JPME"), a company incorporated in England and Wales, seeks to dismiss Plaintiffs' claims for lack of personal jurisdiction. To survive a motion to dismiss for lack of personal jurisdiction, a plaintiff must make a prima facie showing that personal jurisdiction exists; that is, a plaintiff must allege facts to support a reasonable inference that defendant may be subjected to jurisdiction in the chosen forum. *Steinbuch v. Cutler*, 518 F.3d 580, 585 (8th Cir. 2008) (citing *Dever v. Hentzen Coatings, Inc.*, 380 F.3d 1070, 1072 (8th Cir. 2004)). If, as is the case here, the defendant denies jurisdiction, the plaintiff bears the burden of proving facts supporting personal jurisdiction. *See Wells Dairy, Inc. v. Food Movers Int'l, Inc.*, 607 F.3d 515, 518 (8th Cir. 2010) (quotation omitted). Once a defendant offers affidavits to challenge personal jurisdiction, "facts, not mere allegations, must be the touchstone" in determining whether personal jurisdiction exists. *Dever*, 380 F.3d at 1072 (citation omitted); *see also Abbasi v. Leading Edge Aviation Servs., Inc.*, Civ. No. 16-295, 2016 WL 4007571, at *3 (D. Minn. July 26, 2016).

### B.    The Court Does Not Have Personal Jurisdiction

Personal jurisdiction is a two-step analysis: the Court must have statutory and constitutional authority for exercising jurisdiction over the defendant. Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, 4A *Fed. Prac. & Proc*. § 1069 (4th ed. 2017).

### 1.    Statutory Jurisdiction

Federal Rule of Civil Procedure 4(k) provides that a court can exercise jurisdiction over a defendant if:  (1) jurisdiction is allowed under the state long-arm statute; (2) the party is served within 100 miles of the courthouse; or (3) service is allowed under a federal statute.  This case is brought under the Edge Act, which does not specifically provide for national service of process.  *See, e.g.*, *Societe d'Assurance de l'Est SPRL v. Citigroup Inc.*, Civ. No. 10-4754, 2011 WL 4056306, at *7 (S.D.N.Y. Sept. 13, 2011) (collecting cases).  Thus, the Court must use a state long-arm statute, and both parties agree that the New York long-arm statute applies here (the state where this case originated from).  (*See* Ritchie-JPME Opp. at 5.)

 "Pursuant to CPLR 302(a)(1), 'long-arm jurisdiction over a nondomiciliary exists where (i) a defendant transacted business within the state and (ii) the cause of action arose from that transaction of business.'" *Andrews v. Modell*, 921 N.Y.S.2d 908, 908 (N.Y. App. Div. 2011).  Here, Plaintiffs allege that JPMorgan Europe maintained a bank account in New York, which was allegedly used to launder money for Petters.  JPMorgan Europe does not contest that the Court has jurisdiction pursuant to the New York long-arm statute.  Thus, the Court finds that it has personal jurisdiction under CPLR 302(a)(1).

### 2.    Constitutional Jurisdiction

Even if the Court has statutory jurisdiction, the exercise of jurisdiction must comport with due process.  The United States Supreme Court has explained that constitutional due process requires that a defendant have "certain minimum contacts"

11

with the forum state such that "maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (internal quotation marks omitted).  A defendant's conduct and connection with the forum state must be such that the defendant "should reasonably anticipate being haled into court there."  *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980). "It is essential in each case that the defendant has purposefully availed itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws."  *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985) (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)).

Further, personal jurisdiction may be either general or specific.  When a defendant's activities in the forum state are "continuous and systematic," a court may assert general jurisdiction over the defendant and hear all claims against the defendant. *Johnson v. Arden*, 614 F.3d 785, 794 (8th Cir. 2010).  On the other hand, when a defendant has purposely directed its activities at the forum state, a court may assert specific jurisdiction over the defendant and hear claims that arise out of or relate to those activities.  *Id.*

Here, Plaintiffs contend that the Court has specific jurisdiction over JPME based on JPME's contacts with New York.  Plaintiffs allege that:  (1) JPME was the administrative agent for the European Syndicate Lenders for the $250 million revolving credit agreement with Polaroid; (2) JPME maintained bank accounts in New York; (3) JPME entered into blocked-account agreements between JPMorgan and Polaroid; and

12

(4) JPME is a department of JPMorgan.  The Court concludes that none of these alleged

contacts is sufficient to allow the Court to exercise jurisdiction over JPME.

     *First*, the Ritchie Entities argue that JPME has adequate minimum contact with

New York because JPME was the administrative agent for the European-based Syndicate

Lenders.  In its capacity as the administrative agent, JPME signed a payoff letter along

with U.S. corporations removing liens held by the European-based Syndicate Lenders.

Plaintiffs, however, fail to explain how JPME entering into agreements with

United States residents constitutes contacts with New York.  *Narrative Ark Entm't LLC v.*

*Archie Comic Publ'ns, Inc.*, Civ. No. 16-6109, 2017 WL 3917040, at *8 (S.D.N.Y.

Sept. 5, 2017) ("It is well established '[t]he mere fact that a non-domiciliary enters into a

contract with a company headquartered in New York does not establish the requisite

minimum contacts, unless the purpose of the contract is to project the non-domiciliary

into the New York market.'" (quoting *Spencer Trask Ventures, Inc. v. Archos S.A.*, Civ.

No. 01-1169, 2002 WL 417192, at *4 (S.D.N.Y. Mar. 18, 2002) (alterations in the

original))).  Thus, the Court concludes that Plaintiffs have failed to show that JPME has

minimum contacts with New York based on its role as administrative agent for the

European Syndicate Lenders.

     *Second*, the Ritchie Entities argue that JPME has minimum contacts with

New York because JPME maintains bank accounts in New York.  The mere maintenance

of a bank account does not confer jurisdiction on the court.  *See Amigo Foods Corp. v.*

*Marine Midland Bank-New York*, 39 N.Y.2d 391, 396 (N.Y. 1976).  The cases that

support jurisdiction based on maintenance of an account require that the bank direct the

13

moneys to the New York account instead of the accountholder. *See Official Comm. of Unsecured Creditors of Arcapita v. Bahrain Islamic Bank*, 549 B.R. 56, 71 (S.D.N.Y. 2016) ("Had the record demonstrated that [account holder], as opposed to the Banks, selected the U.S. dollar and the New York accounts to effectuate the Placements, the Banks' contacts with the United States would have been adventitious, and jurisdiction would not have lied." (dicta)). Here, Plaintiffs do not allege that JPME decided to use the New York account. Thus, the mere fact that the payments went through the New York account cannot confer jurisdiction. *See id.*

*Third*, Plaintiffs argue that the Court has jurisdiction over JPME because they entered into block-account agreements with JPMC and Polaroid. Under the block-account agreements, ten Polaroid bank accounts in London would be "swept" into a JPMorgan Europe account in New York. The transfers had to be approved by JPME. But the Second Amended Complaint alleges that the block-account agreements swept money into a London account, not a New York one. (SAC ¶ 132.) Thus, the block-account agreements do not constitute contacts with New York.

*Fourth*, the Ritchie Entities argue that the Court has jurisdiction over JPME because it is a department of JPMC. New York law allows courts to exercise general jurisdiction over a foreign parent when a New York subsidiary is a mere department of the foreign parent. *See In re Aluminum Warehousing Antitrust Litig.*, 90 F. Supp. 3d 219, 227 (S.D.N.Y. 2015). Here, however, Plaintiffs seek to exercise jurisdiction over a

foreign subsidiary because it is a mere department of a New York parent.[10]  And

New York law does not confer jurisdiction over a foreign agent based on the acts of the

principal.  *Societe d'Assurance de l'Est SPRL*, 2011 WL 4056306, at *7 (citing *Int'l*

*Customs Assocs., Inc. v. Ford Motor Co.*, 893 F. Supp. 1251, 1262 (S.D.N.Y. 1995)).

Thus, Plaintiffs cannot establish personal jurisdiction over JPME based on its relationship

with JPMC.

Plaintiffs have therefore failed to establish a prima facie basis for the Court to

exercise personal jurisdiction over JPME.  Typically, the Court would stay dismissing the

defendant to allow the plaintiffs to conduct jurisdictional discovery.  But because the

Court concludes that there are additional grounds to dismiss JPME, the Court declines to

grant jurisdictional discovery.

## II.     **Motion to Dismiss for Failure to State a Claim**

Defendants also move to dismiss on the grounds that Plaintiffs' claims are

time-barred or otherwise fail to state a claim.[11]

---

[10]     Plaintiffs cite to *International Equity Investments, Inc. v. Opportunity Equity*
*Partners, Ltd.*, 475 F. Supp. 2d 456 (S.D.N.Y. 2007) for the proposition that a plaintiff
can sue a subsidiary in a forum that has jurisdiction over the parent.  But in *International*
*Equity Investments*, the court concluded that it had jurisdiction over the subsidiaries
because they were alter egos of the controlling shareholders who had already consented
to jurisdiction in New York in a forum-selection clause.  *Id.* at 458-60.  Here, Plaintiffs
make no similar allegations.  Thus, *International Equity Investments* is inapposite.

[11]     Because the Court finds that the claims are time-barred, the Court declines to
examine Defendants' other arguments.

### A.    Standard of Review

In deciding a motion to dismiss under Rule 12(b)(6), a court assumes all facts in the complaint to be true and construes all reasonable inferences from those facts in the light most favorable to the complainant. *Morton v. Becker*, 793 F.2d 185, 187 (8th Cir. 1986). In doing so, however, a court need not accept as true wholly conclusory allegations, *Hanten v. Sch. Dist. of Riverview Gardens*, 183 F.3d 799, 805 (8th Cir. 1999), or legal conclusions drawn by the pleader from the facts alleged, *Westcott v. City of Omaha*, 901 F.2d 1486, 1488 (8th Cir. 1990). A court deciding a motion to dismiss may consider the complaint, matters of public record, orders, materials embraced by the complaint, and exhibits attached to the complaint. *See Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999).

To survive a motion to dismiss, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Although a complaint need not contain "detailed factual allegations," it must contain facts with enough specificity "to raise a right to relief above the speculative level." *Id.* at 555. As the Supreme Court reiterated, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," will not pass muster under *Twombly*. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555). In sum, this standard "calls for enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [the claim]." *Twombly*, 550 U.S. at 556.

**B.    Choice-Of-Law Analysis for Statute of Limitations**

At the outset, the parties dispute what law applies to Defendants' statute-of-limitations defense.  The bankruptcy court did not reach this issue.  Because this case was transferred from New York, the Court must apply New York's borrowing statute.  *See Ferens v. John Deere Co.*, 494 U.S. 516, 524 (1990).  "Under New York's borrowing statute, when a nonresident plaintiff sues upon a cause of action that arose outside of New York, the court must apply the shorter limitations period, including all relevant tolling provisions, of either:  (1) New York; or (2) the state where the cause of action accrued." *Soward v. Deutsche Bank AG*, 814 F. Supp. 2d 272, 278 (S.D.N.Y. 2011) (internal quotation marks and footnote omitted).

The first issue is whether the Ritchie Entities are non-residents.  "Courts within the Second Circuit have consistently held that a business entity's residence is determined by its principal place of business."  *Woori Bank v. Merrill Lynch*, 923 F. Supp. 2d 491, 494 (S.D.N.Y.) (collecting cases), *aff'd*, 542 F. App'x 81 (2d Cir. 2013).  Defendant points to previous filings where each of the Ritchie Entities represent that their principal place of business is in Illinois.[12]  Thus, the Ritchie Entities are non-residents of New York.

---

[12]    The Ritchie Entities noticeably failed to allege their principal place of business, but Yorkville I and Ritchie Capital Management, L.L.C. have both alleged in related actions that their principal place of business is in Illinois.  *See, e.g.*, *Ritchie Capital Mgmt., L.L.C. v. Coleman*, Civ. No. 12-270 (D. Minn.), Doc. No. 1 ¶ 12 ("Plaintiff Ritchie Capital Management, L.L.C. ("RCM") is a Delaware limited liability company with its principal office in Wheaton, Illinois."); *Id.* ¶ 13 ("Yorkville Investments I, L.L.C. . . . has its principal U.S. place of business in Illinois.").  The Court takes judicial notice of these filings.  *See Dittmer Props., L.P. v. F.D.I.C.*, 708 F.3d 1011, 1021 (8th Cir. 2013).

(Footnote Continued on Next Page)

The next issue is where the claims accrued.  "When an alleged injury is purely economic, the place of injury usually is where the plaintiff resides and sustains the economic impact of the loss."  *Woori Bank v. Merrill Lynch*, 923 F. Supp. 2d at 495 (quoting *Glob. Fin. Corp. v. Triarc Corp.*, 715 N.E.2d 482, 485 (N.Y. 1999)); *see also Luv N' Care, Ltd v. Goldberg Cohen, LLP*, Civ. No. 16-3219, 2017 WL 3588274, at *1 n.1 (2d Cir. Aug. 21, 2017) (noting that the New York Court of Appeals has yet to address where a business resides, but "likely would hold" that the claim accrues in the state where the corporation is principally located).  Here, Plaintiffs reside in Illinois and suffered purely economic injuries.  The claims therefore accrued in Illinois.  Because the claims accrued in Illinois, the Court will apply the shorter of the New York or Illinois statute of limitations.

Plaintiffs' arguments to the contrary are unpersuasive.  First, Plaintiffs argue that the Court should not decide, on a motion to dismiss, which law applies for the statute of limitations.  But when, like here, the facts are clear, courts can decide which state's law applies.  *Patel v. N.Y. Life Ins. Co.*, Civ. No. 11-4895, 2012 WL 1883529, at *3

(Footnote Continued From Previous Page)
       The remaining Ritchie Entities (Ritchie Special Credit Investments, Ltd.; Rhone Holdings II, Ltd.; Ritchie Capital Structure Arbitrage Trading, Ltd.; and Ritchie Capital Management, Ltd.) are all exempt Cayman Island companies.  (SAC ¶¶ 8-11.)  Exempt Cayman companies must predominately operate outside of the Cayman Islands.  *See* Cayman Island Companies Law § 163.  Here, the Ritchie Entities have represented that the Cayman Island companies are managed by Ritchie Capital Management, L.L.C., which is principally based in Illinois.  (*See* SAC ¶ 11.)  Plaintiffs do not even address Defendants' argument that the exempt Cayman Island companies are principally based in Illinois.  (*See* Ritchie-JPMC Opp. at 15-16.)

18

(S.D.N.Y. May 21, 2012) (citing *Pennecom B.V. v. Merrill Lynch & Co.,* Civ.

No. 02-5355, 2005 WL 2044948 (S.D.N.Y. Aug. 25, 2005)).

Second, Plaintiffs cite to *Lang v. Paine, Webber, Jackson & Curtis, Inc.*,

582 F. Supp. 1421 (S.D.N.Y.1984) and argue that their residences could also be their

state of incorporation. "The *Lang* exception, however, is applied only in the 'extremely

rare' case where the party has offered 'unusual circumstances' evincing that the

economic injury occurred at a place other than the plaintiff's residence." *Baena v. Woori*

*Bank*, Civ. No. 05-7018, 2006 WL 2935752, at *6 (S.D.N.Y. Oct. 11, 2006). Here,

Plaintiffs have offered no evidence that their injury was felt anywhere other than where

they principally operate. Thus, the Court concludes that Plaintiffs have failed to show

that the *Lang* exception applies.

### C.    Plaintiffs' Claims Are Facially Time-Barred.

Defendants argue that Plaintiffs' claims are time-barred. The shorter of New York

or Illinois law applies. Illinois's statute of limitations for tort injuries to property is five

years.[13] *See* 735 Ill. Comp. Stat. Ann. 5/13-205. The Ritchie Entities lent the money to

Petters between February and May 2008, but did not file their complaint until April

2014, more than five years after the original injury. Thus, facially, the claims appear

time-barred. The Ritchie Entities tacitly concede that their claims are facially

time-barred under Illinois law by not arguing otherwise. (*See* Ritchie-JPMC Opp. at

---

[13]    Defendants properly apply on a per-claim basis the shorter of New York's or
Illinois's statute of limitations. (JPMC's MTD at 13-18.) Because Plaintiffs' claims are
all untimely under Illinois law even when that is the lengthier period, the Court declines
to apply a per-claim analysis.

14-19.)  Instead, the Ritchie Entities focus on when the claims accrued under Illinois law

and whether equity tolled the running of the statute.  (*Id.* at 19-23.)

### D.    The Discovery Rule

The Ritchie Entities argue that their claims are timely under Illinois law pursuant

to the discovery rule.  Under Illinois law, the statute of limitations begins to run "when a

party knows or reasonably should know both that an injury has occurred and that it was

wrongfully caused."  *See, e.g.*, *Khan v. Deutsche Bank AG*, 978 N.E.2d 1020, 1029 (Ill.

2012).  When a defendant moves to dismiss based on a statute-of-limitations defense, the

plaintiff has the burden of showing that the discovery rule applies.  *Hermitage Corp. v.

Contractors Adjustment Co.*, 651 N.E.2d 1132, 1138 (Ill. 1995).

Here, Plaintiffs argue that the discovery rule applies because they did not learn

that Defendants knew about the Ponzi scheme until well after they loaned the money.

Plaintiffs have made a similar argument against other defendants related to Petters, and

Illinois courts have rejected the argument.  For example, Ritchie Capital Management,

L.L.C. sued Fredrikson & Bryon (Petters's counsel) alleging that Fredrikson was aware

of and facilitated Petters's fraud.  *Ritchie Capital Mgmt., L.L.C. v. Fredrickson & Byron,

P.A.*, 2015 IL App (1st) 142067-U, 2015 WL 1445681 at *2 (Ill. Mar. 27, 2015).

Fredrikson moved to dismiss on the grounds that the suit was untimely.  *Id.*  Ritchie

Capital Management, L.L.C. argued that the discovery rule applies because Fredrikson's

role was not immediately known.  *See id.* at *10.  The Illinois court, however, rejected

the notion that the statute of limitations did not begin to run until the plaintiff learned that

Fredrikson was the source of the injury.  *See id.* at *12 ("Even if Ritchie is correct,

however, it is still evident from the undisputed facts . . . that [Fredrikson] was a potential source of Ritchie's injury."); *see also Gecker v. Gen. Elec. Capital Corp.*, Civ. No. 14-8447, 2015 WL 5086398, at *13 (N.D. Ill. July 27, 2015) ("The statute of limitations began to run at that point even if [the Petters's bankruptcy trustee] did not know that GECC played a part in any wrongdoing [in perpetuating the Ponzi scheme]."); *Castello v. Kalis*, 816 N.E.2d 782, 789 (Ill. App. Ct. 2004) (collecting cases) ("The phrase 'wrongfully caused' does not mean knowledge of a *specific* defendant's negligent conduct or knowledge of the existence of a cause of action." (quoting *Young v. McKiegue*, 708 N.E.2d 493, 500 (Ill. App. Ct. 1999)).

In this case, the Court concludes that Plaintiffs have failed to demonstrate that the discovery rule suspended the accrual of the statute of limitations. By the end of 2008, Plaintiffs knew that Petters had been arrested, and Petters, PCI, and PGW (Polariod's parent company) had all been indicted. The indictment detailed the Ponzi scheme and explained that some of the funds were used to fund legitimate businesses. (*USA v. Petters, et al.*, Crim. No. 08-364, Doc. No. 79 ¶¶ 7-8.) Additionally, the indictment sought forfeiture of assets traceable to the fraud. (*Id. ¶* 27.) Thus, Plaintiffs knew or should have known by the end of 2008 that they had been injured and that the cause of the injury was actionable. Plaintiffs focus their argument on when they learned of Defendants' alleged role in the fraud, but that focus is incorrect. Because Plaintiffs knew or should have known that they were injured by wrongful conduct no later than when Petters was arrested and indicted for fraud in 2008, the claims accrued in 2008, more than five years before Plaintiffs filed suit here.

E.    **Equitable Estoppel**

The Ritchie Entities also argue that equitable estoppel tolled the running of the statute of limitations.  "The gist of the doctrine is that 'one cannot justly or equitably lull his adversary into a false sense of security, causing him to subject his claim to the bar of the statute, and then plead the very delay caused by his course of conduct.'"  *See, e.g.*, *Anderson v. Holy See*, 878 F. Supp. 2d 923, 935 (N.D. Ill. 2012) (quoting *Beynon Bldg. Corp. v. Nat'l Guardian Life Ins. Co.*, 455 N.E.2d 246, 252 (Ill. App. Ct. 1983)).  The party seeking estoppel has the burden of showing it applies.  *See, e.g.*, *id.*  Here, Plaintiffs contend that equitable estoppel applies because Defendants quashed Plaintiffs' discovery requests.  (Ritchie-JPMC Opp. at 22-23.)  The Ritchie Entities, however, failed to demonstrate how Defendants lulled Plaintiffs into delaying their lawsuit.  Indeed, the Ritchie Entities never received the discovery but still were able to file.  Thus, the Court concludes that Plaintiffs have failed to show that equitable estoppel applies.

## ORDER

Based on the files, record, and proceedings herein, **IT IS HEREBY ORDERED** that:

1.    Consistent with this Order, the Court **GRANTS IN PART** and **DENIES IN PART** the Objections (Doc Nos. [160]) to the Report and Recommendation (Doc. No. [159]).

2.    Plaintiffs' Second Amended Complaint (Doc. No. [164]) is **DISMISSED WITH PREJUDICE**.

3.      Plaintiffs' Motion to Withdraw the Reference (Doc. No. [163]) is **DENIED**

as moot.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated:  December 14, 2017                    s/Donovan W. Frank
                                             DONOVAN W. FRANK
                                             United States District Judge