# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Ritchie Special Credit Investments, Ltd.;
Rhone Holdings II, Ltd.; and Ritchie
Capital Management SEZC, Ltd.,

                Plaintiffs,

v.

JPMorgan Chase & Co.; JPMorgan Chase
Bank, N.A.; J.P. Morgan Private Bank;
Richter Consulting, Inc.; and J.P. Morgan
Europe Ltd.,

                Defendants.

Civil No. 14-4786 (DWF/FLN)

**MEMORANDUM
OPINION AND ORDER**

---

James W. Halter, Esq., Rasco Klock Perez & Nieto, LLC; Kelly A. Lelo, Esq., and
Patrick H. O'Neill, Jr., Esq., Larson King, LLP, counsel for Plaintiffs.

Alan Craig Turner, Esq., Isaac Martin Rethy, Esq., and Joshua C. Polster, Esq., Simpson
Thacher & Bartlett LLP; and John R. McDonald, Esq., Taft Stettinius & Hollister, LLP,
counsel for Defendants JPMorgan Chase & Co. and JPMorgan Chase Bank, N.A.

Allen P. Pegg, Esq., John F. O'Sullivan, Esq., and Joshua Fordin, Esq., Hogan Lovells
US LLP; and Timothy P. Griffin, Esq., and Robert T. Kugler, Esq., Stinson LLP; counsel
for Richter Consulting, Inc.

Alan Craig Turner, Esq., and Joshua C. Polster, Esq., Simpson Thacher & Bartlett LLP;
and John R. McDonald, Esq., Taft Stettinius & Hollister, LLP, counsel for Defendant J.P.
Morgan Europe, Ltd.

---

## INTRODUCTION

This matter is before the Court on the following motions: (1) Defendant

JPMorgan Chase & Co. and JPMorgan Chase Bank, N.A.'s (together "JPMC") Motion to

Dismiss Third Amended Complaint ("TAC") (Doc. No. 221); (2) Defendant Richter Consulting, Inc.'s ("Richter") Renewed Motion to Dismiss the TAC (Doc. No. 231); and (3) Defendant JP Morgan Europe Ltd.'s ("JPME") Motion to Dismiss the TAC (Doc. No. 226). For the reasons set forth below, the Court grants the motions.[1]

## BACKGROUND

As outlined in prior orders, Petters's fraud is well known. In short, convicted fraudster Thomas Petters ("Petters") operated a Ponzi scheme whereby he would fabricate purchase orders from wholesalers and get financiers to lend money to fund the purchase orders. The Ponzi scheme was operated through Petters Company, Inc. ("PCI"). Petters also owned a number of legitimate businesses under a parent company, Petters Group Worldwide, LLC ("PGW"). According to Plaintiffs[2], Defendants JPMC, JPME and Richter (collectively, "Defendants") were aware of Petters's Ponzi scheme, but for their own financial benefit encouraged Plaintiffs to loan hundreds of millions of dollars to Petters and his related entities. Defendants deny liability and contend instead that Ritchie pursued outsized returns on risky loans to Petters's businesses and now seeks to shift the losses to Defendants.

---

[1] When possible, the Court will address common arguments together.

[2] Ritchie Capital Management, L.L.C. and Yorkville Investments I, L.L.C. have been dismissed. The remaining Plaintiffs are Cayman-based Ritchie Special Credit Investments, Ltd., Rhone Holdings II, Ltd., and Ritchie Capital Management SEZC, Ltd. (f/k/a Ritchie Capital Management, Ltd.) (collectively, the "Ritchie Entities" or "Ritchie").

The primary fraud in this case involved Polaroid Corporation ("Polaroid"). (Doc. No. 214, ("TAC") ¶ 1.) Ritchie alleges that in 2005, JPMC orchestrated the sale of Polaroid to Petters for approximately $426 million. (*Id.*) The deal was complex, and as a result, Polaroid became a subsidiary of PGW. JPMC loaned $125 million to Polaroid Corporation and other Syndicated Lenders loaned another $250 million as a revolving-credit agreement. Polaroid was unable to repay the loan. And in February 2007, Ritchie alleges that instead of foreclosing on the loans, JPMC entered into a number of forbearance agreements and extensions and assisted Petters in finding sources to repay the loans, including loans from Ritchie.

Also in February 2007, Polaroid allegedly hired Richter, a financial advisory and consulting firm, as a condition to JPMC's first loan extension, giving Richter complete access to Polaroid's books and records. (*Id.* ¶ 143.) During the spring and summer of 2007, Richter prepared reports for JPMC and other lenders about Polaroid's financial condition. (*Id.* ¶¶ 143, 146.) Ritchie does not allege that it employed Richter. Nor does Ritchie allege that Richter knew that PCI or Petters was engaged in fraud or that Richter reviewed or had access to the Petters's or PCI's books or records. (TAC ¶ 200.) In December 2007, Polaroid allegedly expanded the scope of Richter's services to include assistance in securing financing for Polaroid. (*Id.* ¶ 164.)

In January 2008, JPMC allegedly learned of PCI's Ponzi scheme and refused additional loan extensions. On January 31, 2008, Petters reached out to Thane Ritchie, principal of Ritchie, to solicit a loan. (*Id.* ¶ 175.) Beginning the next day and over the next few weeks, Ritchie transferred over $180 million, in a number of transactions, to

Petters. The loans were retroactively documented as "promissory notes" issued by PCI and PGW and with Petters as the co-signatory and guarantor. Ultimately, the loans from Ritchie went to PCI primarily to pay off investors in the Ponzi scheme.

Ritchie alleges that in the afternoon on February 1, 2008, an officer of PGW emailed Ritchie purported Polaroid "due diligence" materials allegedly containing false and misleading statements and omitted facts, such as the existence of Petters's and PCI's fraud. (*Id*. ¶¶ 183, 187-88.) Ritchie also alleges that Richter "ratified" these documents. However, there are no factual allegations that Richter possessed the alleged due diligence materials, that Richter's name appeared on any of the materials, or that Richter was a direct recipient of, or copied on, the transmission of the materials to Ritchie. There is also no allegation that Richter prepared the due diligence materials or sent the materials to Ritchie. (*Id*. ¶ 183.)

Ritchie alleges that Defendants aided and abetted Petters in fraudulently inducing Ritchie to extend loans to Petters. For example, Ritchie asserts that JPMC knew or consciously avoided confirming that Petters was engaging in a fraudulent purchase order financing scheme at PCI but proceeded with the deal so Petters could repay JPMC. According to Ritchie, JPMC acted to ensure it could get repaid before the fraud was fully exposed to others affected by it. Ritchie maintains that JPMC was aware of a number of "red flags" associated with Petters and his businesses and knew that Ritchie's transfers to PCI passed through numerous Petters-related accounts before being paid to JPMC.

After the Ponzi scheme collapsed, Petters and his companies were placed into receivership and a number of Petters's companies declared bankruptcy. In particular, in

October 2008, PCI and PGW filed for bankruptcy protection in this District. *See In re Petters Co., Inc.*, No. 08-45257 (Bankr. D. Minn. Oct. 11, 2008). PCI, PGW, and other Petters-related debtors were consolidated into an omnibus proceeding. *See generally id*. The Debtors' bankruptcy trustees (the "Trustees") and Petters's Receiver filed hundreds of adversary proceedings seeking to recover the allegedly fraudulent transfers and damages, including proceedings against certain JPMC Defendants. *See, e.g.*, *Kelley v. JPMorgan Chase & Co.,* No. 10-04443 (Bankr. D. Minn.), Doc. No. 79 (Am. Compl.) ¶ 1, 305-10; *In re Petters Co., Inc., et al.*, No. 08-45257 (Bankr. D. Minn.), Doc. No. 4019 at 6-7; *United States v. Petters*, Civ. No. 08-5348 (D. Minn.), Doc. No. 2990 at 4-5.

In May 2018, JPMC Bank and JPMC & Co. settled the adversary proceedings with both the Trustees and the Receiver. The court approved the settlements and, in connection with the approvals, the court entered bar orders permanently enjoining Petters's creditors from asserting any claims that belonged to the Trustees or Receiver or claims that are derivative of any such claims, whether denominated in tort, unjust enrichment, or otherwise, and including but not limited to claims for fraudulent transfer. *See In re Petters Co., Inc., et al.*, No. 08-45257 (Bankr. D. Minn.), Doc. No. 4019 at 6-7; *see, e.g.*, *United States v. Petters*, Civ. No. 08-5348 (D. Minn.), Doc. No. 2990, at 4-5.[3]

---

[3] In May 2017, the Bankruptcy Court issued a Report and Recommendation recommending dismissal of Ritchie's Second Amended Complaint on standing and abstention grounds. *See Ritchie Cap. Mgmt., LLC v. JPMorgan Chase & Co. (In re Petters Co.)*, Bk. No. 15-04128, Doc. No. 213 at 2-3.

This lawsuit is one of many filed by Ritchie.[4]  In an order dated December 14, 2017, the Court dismissed Ritchie's Second Amended Complaint, holding that all of Ritchie's claims were time-barred under Illinois's five-year statute of limitations.  *See Ritchie Cap. Mgmt., L.L.C. v. JPMorgan Chase & Co.*, Civ. No. 14-4786, 2017 WL 6403096, at *8-9 (D. Minn. Dec. 14, 2017) (*Ritchie I*).  The Court declined to consider Defendants' alternative grounds for dismissal.  (*Id*. at *6 n.11.)  On appeal, the Eighth Circuit Court of Appeals affirmed the Court's dismissal of claims made by Ritchie Capital Management, L.L.C. and Yorkville Investment I, L.L.C. as time-barred, but reversed and remanded as to three remaining plaintiffs (Ritchie Special Credit Investments, Ltd., Rhone Holdings II, Ltd., and Ritchie Capital Management SEZC, Ltd. (f/k/a/ Ritchie Capital Management, Ltd.)).  *See Ritchie Capital Mgmt., L.L.C. v. J.P. Morgan Chase & Co*., 960 F.3d 1037, 1048-51 (8th Cir. 2020) ("*Ritchie II*").  These entities (the current and remaining Plaintiffs) are all Cayman Island exempt companies and the panel majority held that the Court could not yet find that the claims of the exempt companies accrued in Illinois and were therefore barred by the Illinois statute of limitations.  *Id*. at 1050-51.  The Eighth Circuit remanded the case, including for the consideration of Defendants' alternative grounds for dismissal.  *Id*. at 1055.

---

[4]  Defendants point out that this case is one of many filed by Ritchie seeking to recover damages on the theory that defendants allegedly aided and abetted Petters's fraud.  Defendants also assert that none of the other cases have proceeded beyond a motion to dismiss.  (Doc. No. 223 at 5.)

Ritchie (now consisting of the Cayman Island exempt entities) amended its complaint and filed its TAC. (*See* TAC.) Ritchie asserts eight causes of action: (1) Aiding and Abetting Fraud (against JPMC); (2) Aiding and Abetting Fraud (against Richter Consulting and vicariously against JPMC); (3) Aiding and Abetting Conversion– the March Loan (against JPMC); (4) Negligence (against JPMC and Richter Consulting); (5) Breach of Fiduciary Duty (against JPMC); (6) Unjust Enrichment (against all defendants); (7) Constructive Fraudulent Conveyance—repayment to JPMC of the $6.5 million in March 2008 and Petters's security interest (against JPMC); and (8) Knowing Fraudulent Conveyance – repayment of the $6.5 million in March 2008 and Petters's security interest (against JPMC). Defendants move to dismiss Ritchie's claims.

## DISCUSSION

### I. Legal Standard

In deciding a motion to dismiss under Rule 12(b)(6), a court assumes all facts in the complaint to be true and construes all reasonable inferences from those facts in the light most favorable to the complainant. *Morton v. Becker*, 793 F.2d 185, 187 (8th Cir. 1986). In doing so, however, a court need not accept as true wholly conclusory allegations. *Hanten v. Sch. Dist. of Riverview Gardens*, 183 F.3d 799, 805 (8th Cir. 1999), or legal conclusions drawn by the pleader from the facts alleged. *Westcott v. City of Omaha*, 901 F.2d 1486, 1488 (8th Cir. 1990). A court deciding a motion to dismiss may consider the complaint, matters of public record, orders, materials embraced by the complaint, and exhibits attached to the complaint. *See Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999).

To survive a motion to dismiss, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Although a complaint need not contain "detailed factual allegations," it must contain facts with enough specificity "to raise a right to relief above the speculative level." *Id*. at 555. As the Supreme Court reiterated, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," will not pass muster under *Twombly*. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555). In sum, this standard "calls for enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [the claim]." *Twombly*, 550 U.S. at 556.

In addition to the pleading standard explained by the Supreme Court in *Twombly* and *Iqbal*, Federal Rule of Civil Procedure 9(b) requires "particularity" when pleading fraud. Fed. R. Civ. P. 9(b). "Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." *Id*. To satisfy Rule 9(b)'s requirement that the circumstances constituting alleged fraud be stated with particularity, "the complaint must plead the 'who, what, where, when, and how' of the alleged fraud." *Drobnak v. Andersen Corp.*, 561 F.3d 778, 783 (8th Cir. 2009) (citation omitted); *see also Parnes v. Gateway 2000, Inc.*, 122 F.3d 539, 549–50 (8th Cir. 1997). "Conclusory allegations that a defendant's conduct was fraudulent and deceptive are not sufficient to satisfy the rule." *Schaller Tel. Co. v. Golden Sky Sys., Inc.*, 298 F.3d 736, 746 (8th Cir. 2002) (citation omitted). Aiding and abetting fraud claims must meet Rule 9(b)'s heightened pleading standards. *See E-Shops Corp. v. U.S. Bank Nat'l Ass'n*, 678 F.3d 659, 663 (8th Cir.

2012); *Musalli Factory for Gold & Jewelry v. JP Morgan Chase Bank, N.A.*, 261 F.R.D. 13, 23 (S.D.N.Y. 2009).

## II.    Standing

The Court first addresses the issue of standing. Ritchie asserts claims for aiding and abetting (against JPMC and Richter), unjust enrichment (against all defendants), and both constructive and knowing fraudulent conveyance (against JPMC). Defendants argue that these claims are general claims common to all of Petters's creditors and derivative of the Petters bankruptcy estate's injury, as opposed to particularized claims alleging specific wrongdoing by JPMC or Richter and leading to Ritchie's injuries. As such, Defendants argue that Ritchie lacks standing to bring these claims because the claims were the property of the Debtors' bankruptcy estates or the Petters receivership.

One of a trustee's duties under the Bankruptcy Code is to "collect and reduce to money the property of the estate for which such trustee serves." 11 U.S.C. §§ 323, 704(a)(1). In order to fulfill its duties, a bankruptcy trustee has standing to pursue direct and derivative claims and causes of action that belonged to the bankruptcy estate on the date the petition was filed. *See* 11 U.S.C. § 704(1) and 1106(a). And when a debtor enters bankruptcy, their derivative claims become the property of the bankruptcy estates. *See In re Petters Co. Inc.*, 565 B.R. 154, 161 (Bankr. D. Minn. 2017). "Property of the estate" is "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). Such interests include "causes of action possessed by the debtor at the time of filing." *In re Jackson*, 593 F.3d 171, 176

(2d Cir. 2010); *see also In re Senior Cottages of Am., LLC*, 482 F.3d 997, 1001 (8th Cir. 2007).

"[T]o promote the orderly resolution of all claims and prevent creditors from racing to the courthouse to achieve preferential recoveries, the bankruptcy trustee has exclusive standing to assert causes of action belonging to the estate." *Ritchie Cap. Mgmt. v. General Elec. Cap. Corp. ("GECC")*, 121 F. Supp. 3d 321, 333 (S.D.N.Y. 2015), *aff'd*, 821 F.3d 349 (2d Cir. 2016) (citation omitted). General claims—those with no particularized injury arising from them—that can be brought by any creditor of the debtor, must be brought by the trustee, for the benefit of all creditors. *Id*. at 333-34. In contrast, particularized claims are specific to a plaintiff, in that the injury is "directly traced to" the non-debtor's conduct. *Id*.

### 1. Aiding and Abetting Claims

In Counts One-Three, Ritchie alleges that JPMC and Richter aided and abetted Petters's specific Polaroid-related fraud against Ritchie in 2008, as well as ongoing fraud through September of 2008, and that JPMC aided and abetted the conversion of a March 2008 loan. For example, in Count One, Ritchie alleges that JPMC aided and abetted Petters's fraud and various misrepresentations and omissions to induce Ritchie to loan Petters money, including the compiling of false and misleading due diligence, assisting Petters in finding funding sources, and obscuring the sources of funds despite knowledge of the fraudulent nature and insolvency of Petters's enterprises and the imminent financial collapse of Polaroid. In Count Two, Ritchie alleges that Richter (and JPMC, vicariously) aided and abetted Petters's fraud by helping Polaroid prepare misleading

due-diligence materials, connect with potential lenders, and that Richter inflated Polaroid's value and failed to disclose damaging facts. In Count Three, Ritchie alleges that JPMC aided and abetted the conversion of funds.

Ritchie argues that these claims never belonged to PCI, PGW or any of the relevant Polaroid-related companies that filed petitions for bankruptcy in December 2008. Ritchie asserts that PCI, in particular, was never defrauded by Petters and suffered no damages from the Polaroid fraud. Thus, Ritchie argues that these claims were not part of the bankruptcy estates. In addition, Ritchie contends that the aiding and abetting claims are direct and particularized. For example, Ritchie alleges that no other creditor was promised that its loan would have a security interest in Polaroid and its brand.

Both JPMC and Richter argue that Ritchie's aiding and abetting fraud claims are generalized claims and derivative of the Petters bankruptcy estates. For example, JPMC argues that Ritchie's aiding and abetting claims seek to hold defendants liable for alleged harm suffered by PCI and PGW that, in turn, harmed their creditors, including Ritchie. (*See, e.g.*, TAC ¶¶ 201, 234-35, 237-42, 287, 289, 311.) JPMC asserts that there is no alleged particularized misconduct or misrepresentation made by JPMC toward Ritchie that uniquely harmed Ritchie. Similarly, Richter argues that the claims against it are quintessential derivative claims.

The Court concludes that Ritchie's aiding and abetting claims were the property of the bankruptcy estates. Ritchie largely takes issue with misrepresentations made by Petters to Ritchie and the allegations do not concern particularized conduct by JPMC or Richter toward Ritchie or any unique harm suffered by Ritchie from interactions with

JPMC or Richter.[5]  The alleged loss of Ritchie's funds was a result of the collapse of Petters's Ponzi scheme.  Ritchie's claims allege the same kind of harm—a loss of funds—that affected all creditors of the Petters entities, namely that it lost money it loaned to Petters and his entities because it did not know about the Ponzi scheme.  This is the same injury suffered by all creditors who loaned and lost money in the scheme.  *See, e.g.*, *Gecker v. GECC*, Civ. No. 14-8447, 2015 WL 5086398, at *10 (N.D. Ill. July 27, 2015) (holding plaintiff suffered no unique harm); *Greenpond South, LLC v. GECC*, 886 N.W.2d 649, 656 (Minn. Ct. App. 2016) ("None of the facts alleged by [plaintiff] distinguish the injury it suffered from the injury suffered by other lenders."); *Ritchie Cap. Mgmt., L.L.C. v. Opportunity Fin., L.L.C.*, Civ. No. 27-13-17424, 2015 WL 787747, at *5 (Minn. Dist. Ct. Jan. 15, 2015) (explaining an injury was predicated on a legal injury to the bankruptcy estate).  Ritchie has not alleged any harm that is separate or distinct from the losses suffered by similarly situated creditors, and thus does not show any "particularized" injury.  These are derivative claims, over which the Trustees had exclusive standing to pursue.  *See In re: Petters Co.*, No. 08-45257, Doc. No. 213 at 15; *Greenpond South*, 886 N.W.2d at 657; *Ritchie v. GECC*, 121 F. Supp. 3d at 335, 338.[6]  Notably, the Trustees did assert and pursue similar claims in the adversary proceedings against JPMC, including the claim that JPMC aided and abetted Petters's wrongdoing.

---

[5]     Ritchie does not allege any misrepresentations by JPMC to Ritchie.  In addition, Ritchie has not alleged that it had a business relationship with Richter, or that it communicated or even knew of Richter at the time of the events of the TAC.

[6]     Similar claims by Ritchie in numerous other cases have been dismissed on the same grounds.

*See Kelley v. JPMorgan Case & Co.*, No. 10-04443, Doc. No. 79 ¶¶ 1-3, 305-10 (alleging aiding and abetting tortious conduct).

For the above reasons, the Court concludes that Ritchie lacks standing to bring its aiding and abetting claims. Counts One, Two, and Three are properly dismissed.

### 2.    Fraudulent Transfer and Unjust Enrichment

In Counts Seven and Eight, Ritchie alleges claims for fraudulent transfer, and in Count Six, Ritchie alleges a claim for unjust enrichment. These claims seek, in part, to reclaim an alleged $6.5 million repayment to JPMC on a PGW credit line, based on allegations that the money was transferred from Ritchie's account into a "Petters company [Incorporated] account" to "take out JPMorgan" and the transfer of security interest in Petters's property. (TAC ¶¶ 222, 223, 343, 349, 355-59.) Ritchie argues that this money was transferred to Petters personally and thereafter conveyed to JPMC. Ritchie also argues that this transfer did not belong to the PCI Trustee and the bankruptcy estates have no ownership rights over these claims.

Here, Ritchie's claims for fraudulent transfer and unjust enrichment seek to reclaim an alleged $6.5 million repayment to JPMC on a PGW credit line. (*See* TAC ¶¶ 212, 219 (alleging that the money was transferred from Ritchie's account into "a Petters Company [Incorporated] account").) The allegations demonstrate that the money was presumptively the property of PCI. *In re LGI Energy Sols., Inc.*, 460 B.R. 720, 725 (B.A.P. 8th Cir. 2011) ("Under Minnesota law, funds held in a bank account are presumed to belong to the account holder."); *Weisberger v. Weisberger*, 954 N.E.2d 282, 289 (Ill. App. Ct. 2011) (same under Illinois law); *Karaha Bodas Co., L.L.C. v.*

*Pertamina*, 313 F.3d 70, 86 (2d Cir. 2002) (same under New York law).) PCI, in turn, is

one of the debtors. As explained above, the Trustees had exclusive standing to bring

claims arising from the property of the debtor's bankruptcy estates. Thus, Ritchie

cannot bring a claim that is based on the transfer of the debtor's property. *See In re

Schuster*, 132 B.R. 604, 612 (Bankr. D. Minn. 1991) ("The trustee alone has standing to

avoid a debtor's transfers of property which have diminished the bankruptcy estate."); *In

re Strom*, 97 B.R. 532, 539 (Bankr. D. Minn. 1989) ("An individual creditor lacks

standing to pursue a fraudulent conveyance action."); *Ritchie v. GECC*, 121 F. Supp.3d

at 333.

In addition, to the extent that Ritchie argues that it has standing to bring these

claims because it involves transfers of Petters's personal property, any such claim was

the property of Petters's Receiver, who already brought and settled claims against JPMC

related to alleged transfers of Petters's personal property, including the security interest

challenged by Ritchie. *See Kelley v. JPMorgan Chase & Co.*, No. 10-4999 (Bankr. D.

Minn.), Doc. No. 1 ("Compl.") ¶¶ 23, 58, 104. And the Bar Order entered in the

settlement between the Receiver and JPMC permanently enjoined any claim that

"belongs or belonged to the Receiver, whether or not already asserted by the Receiver,

or is a derivative of such a Claim." *U.S. v. Petters,* Civ. No. 08-5348 (D. Minn.), Doc.

No. 2990 at 4-5.

Based on the above, the Court concludes that Ritchie lacks standing to bring these

claims. Accordingly, Counts Six, Seven, and Eight are properly dismissed.

### III.    Timeliness

In Counts Four, Five and Six, Ritchie asserts claims for negligence against JPMC and Richter, breach of fiduciary duty against JPMC, and unjust enrichment against all Defendants, respectively.  Defendants argue that these claims are time-barred.

The Eighth Circuit held that New York's choice-of-law principles, and thus New York's borrowing statute, apply to Ritchie's claims.  *See Ritchie II*, 960 F.3d at 1047-49.  The New York borrowing statute, N.Y. C.P.L.R. § 202[7], "requires filing within the limitations period of both the jurisdiction where the claim accrued and New York."  *Id*. at 1048.  Thus, even if Ritchie's claims accrued in the Cayman Islands (or another jurisdiction) for purposes of New York's borrowing statute, the claims must also be filed within New York's statute of limitations.[8]

---

[7]    An action based upon a cause of action accruing without the state cannot be commenced after the expiration of the time limited by the laws of *either* the state *or* the place without the state where the cause of action accrued, except that where the cause of action accrued in favor of a resident of the state the time limited by the laws of the state shall apply.

N.Y. C.P.L.R. § 202 (emphasis added).

[8]    Ritchie argues that the Eighth Circuit already found that such argument was not proper at this stage.  In addition, Ritchie argues that it is not clear that New York law applies to this case.  (Doc. No. 238 at 4-5.)  The Court disagrees.  First, the timeliness of these claims was raised by Defendants as an alternative ground for dismissal.  In addition, the Eighth Circuit affirmed the ruling that, under the New York borrowing statute, Ritchie needed to file suit within the time periods of both the jurisdiction where the claim accrued *and* New York.  *Ritchie II*, 960 F.3d at 1047-49 ("[T]he district was correct to apply New York choice-of-law principles.").

New York has a three-year statute of limitation for negligence, breach of fiduciary duty, and unjust enrichment claims when a plaintiff seeks money damages. N.Y. CPLR 214(3), (4) ("The following actions must be commenced within three years: . . . an action to recover damages for an injury to property except as provided in section 214-c."); *see also, e.g.*, *Anderson v. Greene*, Civ. No. 14-10249, 2016 WL 4367960, at *18 (S.D.N.Y. Aug. 10, 2016) (three-year statute of limitations applies to breach of fiduciary duty claim where plaintiff seeks money damages); *In re Bos. Generating LLC*, 617 B.R. 442, 469 (Bankr. S.D.N.Y. 2020) (applying three-year statute of limitations for unjust enrichment claim seeking monetary damages).[9]

---

[9]    Ritchie argues that New York's six-year statute of limitations governs its breach of fiduciary duty claim against JPMC, along with a two-year discovery rule, because that claim sounds in fraud. (Doc. No. 237 at 25-26.) The six-year limitations period applies where a plaintiff pleads a duty to disclose provided the "fiduciary possesses the requisite intent to deceive." *See Kaufman v. Cohen*, 760 N.Y.S.2d 157, 165 (N.Y. App. Div. 2003). Ritchie, however, does not adequately allege such intent. (*See* TAC ¶¶ 328-30.) Instead, Ritchie alleges that JMPC had a duty to warn or disclose its alleged knowledge of Petters's fraud. But an alleged duty to disclose does not transform a breach of fiduciary duty into a fraud. *See Access Point Med., L.L.C. v. Mandell*, 963 N.Y.S2d 44, 46-47 (N.Y. App. Div. 2013).

Similarly, with respect to its unjust enrichment claim, Ritchie argues that because it seeks "disgorgement" of the proceeds of loans that Ritchie made to Petters after February 1, 2008, that claim is subject to New York's six-year time period for claims seeking equitable relief. However, because Ritchie's request for disgorgement seeks the repayment of its own money, it is a demand for money damages. *See Access Point Med., L.L.C.*, 963 N.Y.S.2d at 46-47; *In re Bos. Generating*, 617 B.R. at 469. Thus, the three-year statute of limitations applies.

The Eighth Circuit affirmed that Ritchie's claims accrued in 2008.[10]  *Ritchie II*, 960 F.3d at 1052.  Ritchie filed its complaint in April 2014, which is more than three years after the claims accrued.  Therefore, Ritchie's claims for negligence, breach of fiduciary duty, and unjust enrichment are all time-barred.

Ritchie also argues that its negligence claim should be equitably tolled.  The Court disagrees.  The Eighth Circuit held that equitable tolling did not apply under Illinois law.  *See Ritchie II*, 960 F.3d at 1053-54.  Now, Ritchie argues that because the motion to dismiss considers the New York statute of limitations, the issue of equitable tolling also falls under New York law.  However, even under New York law, the result would be the same.  First, equitable tolling is not available to state causes of action under New York law.  *See Jang Ho Chi v. Beautri Realty Corp.*, 22 N.Y.S.3d 431, 432 (N.Y. App. Div. 2016); *Kampuries v. Am. Honda Motor*, 204 F. Supp. 3d 484, 492, n.8 (E.D.N.Y. 2016) (collecting cases).  Second, where tolling is applied in New York, the requirements are the same as under Illinois law.  *See Ritchie II*, 960 F.3d at 1054 (explaining that equitable tolling under Illinois law may be appropriate where defendant actively misled plaintiff or prevented plaintiff from asserting rights in an "extraordinary way"); *Shared Commc'ns Servs. of ESR, Inc. v. Goldman, Sachs & Co.*, 832 N.Y.S.2d 32, 33 (N.Y. App. Div. 2007) (equitable tolling applies where plaintiff is prevented from timely filing an action due to

---

[10]     The Eighth Circuit affirmed that District Court's determination that Ritchie's claims accrued when the loans took place "between February and May 2008" and that the Ritchie Entities knew or should have known that they were injured by wrongful conduct "by the end of 2008."  *Ritchie II*, 960 F.3d at 1052.

reasonable reliance by it on "deception, fraud or misrepresentation" by defendant or "in some extraordinary way had been prevented" from timely filing). Thus, Ritchie's arguments in favor of tolling, which are the same as originally asserted, fail.

Based on the above, Counts Four, Five, and Six are properly dismissed with prejudice.

## IV.    Failure to State a Claim

Even though the above claims are properly dismissed for lack of standing and as untimely, the Court briefly considers the merits of these claims below.

### A.    Choice of Law

Because this case was originally filed in New York, New York's choice-of-law rules govern. *In re Coudert Bros. LLP*, 673 F.3d 180, 186 (2d Cir. 2012). Under New York law, courts first determine whether there is an actual conflict between the laws of the jurisdictions involved. *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 672 F.3d 155, 157 (2d Cir. 2012). Here, the potentially relevant jurisdictions are Illinois, New York, and the Cayman Islands. Also under New York law, if the law of the jurisdictions do not conflict, the Court may apply New York law. *Id*. at 157. JPMC asserts that, for most of the claims, there is no conflict and, in any event, the claims fail regardless of which jurisdiction's law applies.

Even if an actual conflict exists, under New York law, the court applies an "interest analysis" to tort claims, under which the law of the jurisdiction having the "greatest interest" applies. *Id*. at 157-58. This test identifies the jurisdiction with the greatest interest in the litigation based on the occurrences and parties' contacts within the

jurisdiction, as they relate to the claims involved. Under this analysis, torts that regulate conduct will generally be governed by the law of the jurisdiction where the tort occurred. *See Pension Comm. of Univ. of Montreal Pension Plan v. Bank of Am. Sec., L.L.C.*, 446 F. Supp. 2d 163, 192 (S.D.N.Y. 2006).

The TAC contains allegations citing connections between the alleged "aiding and abetting" conduct in both Illinois and New York. (*See, e.g.*, TAC ¶¶ 131, 167-68, 204, 224, 240.) Therefore, Illinois or New York law governs these claims. With respect to Ritchie's negligence and breach of fiduciary duty claims, Illinois or New York are the places that would have an alleged connection to the relationship between JPMC and Ritchie. Finally, Ritchie's fraudulent transfer and unjust enrichment claims are based on the same facts—the alleged fraudulent transfer of a $6.5 million loan repayment and the granting of security interests from Petters to JPMC—that occurred in New York. (*See* TAC ¶¶ 223-24, 345.) Thus, those claims are governed by New York law.

Ritchie does not technically concede that New York law applies, although Ritchie cites to New York law throughout its opposition briefs. In addition, Ritchie does not argue that Illinois or any other jurisdiction's law applies. Because Defendants have shown that the application of Illinois law would not change the outcome, the Court applies New York law.

## B. Aiding and Abetting

In order to state a claim for these counts, Ritchie must allege: (1) the existence of an underlying fraud; (2) knowledge of the fraud by the aider and abettor; and (3) substantial assistance of the fraud on the part of the aider and abettor. *See, e.g.*, *In re*

*Agape Litig.*, 681 F. Supp. 2d 352, 362 (E.D.N.Y. 2010), further proceedings, 773 F.

Supp. 2d 298 (E.D.N.Y. 2011); *Anwar v. Fairfield Greenwich Ltd.*, 728 F. Supp. 2d 372,

442 (S.D.N.Y. 2010); *McMahan v. Deutsche Bank AG*, 938 F. Supp. 2d 795, 809 (N.D.

Ill. 2013) (same under Illinois law).

The second element requires a showing that a defendant had "actual knowledge"

of the underlying violation that caused plaintiff harm. *Rosner v. Bank of China*, Civ.

No. 06-13562, 2008 WL 5416380, at *4-5 (S.D.N.Y. Dec. 18, 2008), *aff'd*, 349 Fed.

App'x 637 (2d Cir. 2009). To make this showing, a plaintiff must allege a strong

inference of actual knowledge or conscious avoidance; reckless disregard will not suffice.

*See Kirschner v. Bennett*, 648 F. Supp. 2d 525, 544 (S.D.N.Y.2009) ("To survive a

motion to dismiss, therefore, the [plaintiff] must allege facts giving rise to a 'strong

inference' of defendant's actual knowledge of the underlying harm, or the conscious

avoidance of the same such that 'it can almost be said that the defendant actually knew

because he or she suspected a fact and realized its probability, but refrained from

confirming it in order later to be able to deny knowledge.'"). Constructive knowledge,

which is knowledge that one using reasonable care or diligence would have, is not

enough to state a claim. *Agape II*, 773 F. Supp. 2d at 308. And to show the third element

of "substantial assistance," a plaintiff must show that a defendant: (1) affirmatively

assisted, helped conceal, or "by virtue of failing to act when required to do so" enabled

the fraud to proceed; and (2) the defendant's actions proximately caused the harm on

which the primary liability is predicated. *See Ritchie v. GECC*, 121 F. Supp. 3d at 338.

### 1. JPMC

In support of its aiding and abetting claims against JPMC, Ritchie argues that the allegations in the TAC establish the underlying fraud by Petters, as well as actual knowledge and substantial assistance by JPMC. In particular, Ritchie alleges that JPMC knew that Richter had participated in recruiting Ritchie as a secured lender for Polaroid. (TAC ¶ 226.) Further, Ritchie alleges that JPMC had actual knowledge of Petters's fraudulent activity, including actual knowledge that in March 2008, Ritchie was the source of some funds used to pay JPMC, that Polaroid was insolvent, and that JPMC was willfully blind towards Petters's conduct. (TAC ¶¶ 50, 156-58, 226, 285-86, 295.) Ritchie also submits that the TAC contains allegations of circumstantial knowledge of the fraud through atypical banking practices. Ritchie alleges that JPMC consciously avoided learning the truth of Petters's fraud and had actual knowledge of specific conduct that harmed Ritchie. Finally, Ritchie alleges that JPMC substantially assisted in the fraud by actively extending credit to Petters and pressuring him to find a new lender to ensure that JPMC would be repaid before the Ponzi scheme collapsed.

The Court finds that Ritchie has failed to sufficiently allege an aiding and abetting claim against JPMC. First, Ritchie's allegations of actual knowledge fall short. Allegations that JPMC was aware that Ritchie was the ultimate source of funds used to repay loans and that Polaroid was in financial trouble are not enough to sufficiently plead that JPMC had actual knowledge of Petters's alleged fraudulent inducement of Ritchie. Indeed, there are no specific allegations that JPMC had actual knowledge of wrongful conduct that harmed Ritchie. This is an essential element of the claim. *See, e.g.,*

*Kirshner*, 648 F. Supp. 2d at 544.  Instead, Ritchie alleges more generally that JPMC had knowledge relating to the financial condition of Polaroid and other Petters companies, or knowledge of suspicious transactions.  But knowledge of suspicious banking transactions so as to suggest that something was amiss is not enough to plead actual knowledge of fraud.  *See Rosner v. Bank of China*, 349 Fed. App'x 637, 639 (2d Cir. 2009).

Second, Ritchie's allegations do not establish substantial assistance.  To establish "substantial assistance," Ritchie must show that JPMC's acts "proximately caused the harm upon which the primary liability is predicated."  *Ritchie v. GECC*, 121 F. Supp. 3d at 338.  Here, Ritchie's alleged injury is economic loss resulting from loans to Petters's companies that were not repaid.  Ritchie alleges that JPMC's actions allowed Petters's fraudulent activity to continue.  This, however, is insufficient to show that Ritchie's injury was proximately caused by JPMC.  *See SPV Osus Ltd. v. UBS AG*, 882 F.3d 333, 345-46 (2d Cir. 2018) (finding that the link between defendant's actions (or inactions) in "luring investors" into feeder funds that were in turn invested in a Ponzi scheme and the harm alleged is too attenuated to constitute proximate cause); *Ritchie v. GECC*, 121 F. Supp. 3d at 339.

Ritchie also alleges that JPMC aided and abetted conversion.  In particular, Ritchie alleges that Petters fraudulently induced Ritchie to loan money in March 2008, that JPMC had actual knowledge of Petters's fraudulent activity, and that JPMC substantially assisted the fraud by executing transfers, retaining the payment from Petters, and extending Petters additional credit.  Ritchie argues that its funds were transferred from JPMC to Petters and then from Petters to JPMC.  However, Ritchie has failed to plead

that JPMC knew of Petters's fraud against Ritchie or, more specifically, that JPMC knew about the March 2008 loan or that Petters misrepresented his intended use of the loan money. JPMC's alleged knowledge of Petters's fraudulent activity generally is not enough to show actual knowledge of the specific conversion alleged. *See, e.g.*, *Kirschner*, 648 F. Supp. 2d at 544-45. Here, the alleged provision of banking services (wiring money from Ritchie's account to a Petters account at Ritchie's direction) is not "substantial assistance."

For these reasons, dismissal of the aiding and abetting claims against JPMC is warranted.

### 2. Richter

For similar reasons, Ritchie's aiding and abetting fraud claim against Richter fails. Ritchie alleges that Richter had knowledge of Polaroid's finances, but there is no allegation that Richter had knowledge of either Petters's or PCI's fraud. The TAC fails to raise a sufficiently strong inference of "actual knowledge" of the underlying fraud, let alone the knowledge of fraud against Ritchie. In addition, Ritchie has failed to sufficiently allege "substantial assistance" on the part for Richter. Therefore, Ritchie's aiding and abetting claim against Richter fails.

### C. Negligence

To state a claim for negligence, a plaintiff must establish: (1) a duty owed by the defendant to the plaintiff; (2) a breach of the duty; and (3) injury proximately caused by the breach. *See Solomon ex rel. Solomon v. City of New York*, 66 N.Y.2d 1026, 1027

(1985); *Anwar*, 728 F. Supp. 2d at 416 (requiring plaintiff to plead a duty as a result of a special relationship to state a claim for negligent misrepresentation).

### 1. JPMC

Ritchie argues that JPMC failed to disclose or warn its customers that Petters and his related entities were insolvent and engaged in a Ponzi scheme. (TAC ¶¶ 328-239.) Ritchie further alleges that it and JPMC were in a "relationship far greater than merely a bank and a depositor." (Doc. No. 237.) For example, Ritchie alleges that the banking relationship between Ritchie and JPMC dates back to 2002, includes over 70 accounts with an excess of $300 million in deposits, and that Ritchie had relationships with JPMC advisors that included "financial-advisory services." (TAC ¶¶ 69, 70-75.)

The Court finds that the allegations in the TAC fail to establish that JPMC owed Ritchie a duty. Generally, a banking relationship does not establish a special (or fiduciary) duty unless the bank assumes control and responsibility over the customer's assets or the customer places special trust in and becomes dependent on the bank. *See, e.g.*, *Mfg. Hanover Tr. Co. v. Yanakas*, 7 F.3d 310, 318 (2d Cir. 1993); *ADT Operations v. Chase Manhattan Bank*, 662 N.Y.S.2d 190, 195-96 (1997) ("[T]he New York courts have never adopted the notion that a mere debtor/creditor relationship between a bank and a customer creates a fiduciary duty, and have imposed such a duty only in extreme cases involving grossly unequal bargaining power or domination or control of the customer by the bank."). !Ritchie has failed to plead circumstances that would give rise to a special duty. Accordingly, Ritchie's negligence claim fails. !

### 2. Richter

As to its negligence claim against Richter, Ritchie argues that Richter was acting as a consultant for Polaroid and that it had a sufficiently close relationship with Ritchie that, along with the fact that Ritchie was loaning money to Petters-related entities, makes it proper to impose a duty on Richter.

The Court disagrees.  Here, Richter was hired by Polaroid as a financial consultant tasked with reviewing the creditworthiness of Polaroid in connection with Polaroid's contractual obligations to JPMC.  The facts do not show that Richter was providing accounting services to any Petters-related entity.  Richter was not hired by and never communicated with Ritchie.  In fact, there is no allegation that Ritchie even knew of Richter before the allegedly misleading materials were sent to Ritchie.  There is also no allegation that Richter was a recipient or copied on the email containing those materials.  Even assuming that Richter was acting as an accountant, as a non-client, third-party, Ritchie would have to show that the "primary intent" or "particular purpose" of Richter's work was to benefit Ritchie.  *See, e.g.*, *Credit Alliance Corp. v. Arthur Anderson & Co.*, 483 N.E.2d 110, 118 (N.Y. App. Div. 1985).  Ritchie alleges no facts to support such a showing.

Because Ritchie cannot show that Richter owed it a duty, Ritchie's negligence claim fails.

### D. Breach of Fiduciary Duty (JPMC only)

Ritchie's claim against JPMC for a breach of fiduciary duty is premised on the same purported duty owed by JPMC and, therefore, fails for the same reason as its negligence claim.

### E. Fraudulent Transfer

In Counts Seven and Eight, Ritchie asserts claims, respectively, for constructive and knowing fraudulent conveyance, based on Petters's transfer of $6.5 million in March 2008 to repay a PGW credit line and a security interest in Petters's bank account to guarantee the PGW loan. (TAC ¶¶ 223, 349.)

To state a claim for constructive fraudulent transfer under New York law, a plaintiff must show: "(1) a conveyance (2) without fair consideration, (3) by a person who is insolvent or who becomes insolvent as a consequence of the transfer." *Lippe v. Bairnco Corp.*, 249 F. Supp. 2d 357, 376 (S.D.N.Y. 2003). A plaintiff can show a lack of fair consideration by alleging that the consideration paid was "disproportionately small as compared to the value of the property" or that the transferee did not act in good faith in receiving the property. *Id.* at 376-77. Good faith receipt of property exists where the transferee acted "without either actual or constructive knowledge of any fraudulent scheme." *HBE Leasing Corp. v. Frank*, 48 F.3d 623, 636 (2d Cir. 1995). In addition, knowing fraudulent conveyance requires a showing that the defendant made a conveyance "with actual intent . . . *to hinder, delay, or defraud* either present or future creditors." *Lippe*, 249 F. Supp. 2d at 374 (emphasis in original).

Here, Ritchie fails to state a claim for constructive or knowing fraudulent transfer. First, Ritchie has not pleaded that any transfer lacks "reasonably equivalent value" because the transfers repaid or guaranteed an existing debt. Ritchie instead argues that JPMC knew or should have known of Petters's fraud to further Petters's scheme and therefore lacked "good faith." However, as explained above, Ritchie has not sufficiently alleged facts to show that JPMC knew about Petters's fraud against Ritchie specifically or that the $6.5 million transferred to JPMC was fraudulently obtained. Indeed, the transfers were to repay and secure legitimate lines of credit that JPMC had issued to PGW. The TAC does not sufficiently allege a lack of good faith or that JPMC was motivated by an intent to defraud creditors in furtherance of Petters's fraudulent scheme. Therefore, both claims of fraudulent transfer fail.

## F. Unjust Enrichment

To state a claim for unjust enrichment, Ritchie must allege that a defendant was enriched, at Ritchie's expense, and that it is against equity and good conscience to permit the defendant to retain what Ritchie seeks to recover. This claim seeks redress for the same injury allegedly caused by JPMC's fraudulent transfer. However, an unjust enrichment claim is not available where it simply duplicates a conventional tort claim. *See Corsello v. Verizon N.Y.*, 18 N.Y.3d 777, 779 (N.Y. Ct. App. 2012). For this reason, Ritchie's unjust enrichment claim is properly dismissed. Even so, the Court notes that Ritchie failed to sufficiently plead an unjust enrichment claim for reasons similar to those stated above.

## V.    Claims against JPME[11]

Ritchie asserts the same claims against JPME as it has asserted against JPMC. (TAC ¶ 39 (collectively referring to JPMC and JPME as "JPMorgan").)

In *Ritchie I*, the Court concluded that it lacked personal jurisdiction over JPME. *Ritchie I*, 2017 WL 6403096, at *6**.**  The Eighth Circuit found "no error in the district court's personal jurisdiction analysis." *Ritchie II*, 960 F.3d at 1055.  Even so, the Eighth Circuit reversed and remanded to allow the Court to consider whether jurisdictional discovery is appropriate. *Id*.

The Court concludes that there is no need for jurisdictional discovery, as such discovery would be unnecessary.  First, the Court finds that the claims against JPME are time-barred.  As explained above, the Eighth Circuit found that Ritchie's claims accrued between February and May 2008, and that the Ritchie Entities knew or should have known that they were injured by wrongful conduct by the end of 2008.  *Ritchie II*, 960 F.3d at 1052.  Plaintiffs, however, did not name JPME until February 2015.  Thus, even if a six-year statute of limitations applied, the claims against JPME would be untimely.  Second, even if the claims were timely, they would fail, at a minimum, for the reasons stated above with respect to JPMC.[12]  And to the extent that Ritchie takes issue with

---

[11]    JPME argues that the claims against it are also subject to dismissal because Plaintiffs fail to state a claim against JPME and, independently, for the reasons submitted by JPMC.  (Doc. No. 228 at 3.)

[12]    The TAC contains minimal allegations that are aimed specifically at JPME's conduct.

particularized conduct on the part of JPME to support a claim, it has not sufficiently pleaded such conduct.

Finally, the Court notes that Ritchie has not identified any allegations specifically against JPMC & Co., a holding company and ultimate parent of JPMC Bank. (Opp. to JPME at 14-15.)  Accordingly, any claims asserted against JPMC & Co. are properly dismissed.

## ORDER

Based on the files, record, and proceedings herein, **IT IS HEREBY ORDERED** that:

1.    JPMC's Motion to Dismiss (Doc. No. [221]) is **GRANTED**.

2.    Richter's Renewed Motion to Dismiss (Doc. No. [231]) is **GRANTED**.

3.    JPME's Motion to Dismiss (Doc. No. [226]) is **GRANTED**.

4.    Plaintiffs' Third Amended Complaint (Doc. No. [214]) is **DISMISSED WITH PREJUDICE**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**


Dated:  June 30, 2021                         s/Donovan W. Frank
                                              DONOVAN W. FRANK
                                              United States District Judge